**Yvonne OUIMETTE, bnf Kent Ouimette, her father and natural guardian, and Kent Ouimette, individually**

v.

**Leon F. BABBIE, Principal, Missisquoi Valley Union High School, et al.**

**Civ. A. No. 75-245.**

United States District Court, D. Vermont.

Dec. 3, 1975.

David Curtis, Hoff, Curtis, Bryan, Quinn & Jenkins, Burlington, Vt., for plaintiff.

Edward Tyler, Tyler & Bruce, St. Albans, Vt., for defendants.

**526**

## FINDINGS OF FACT, CONCLUSIONS AND ORDER

HOLDEN, Chief Judge.

The plaintiff Kent Ouimette has instituted this proceeding in his own behalf and for the benefit of his daughter Yvonne, against the principal and school directors of the Missisquoi Valley Union High School. The purpose of the action is to enjoin the defendants from excluding Yvonne from attending classes at Missisquoi Valley Union High School (MVUHS) because of her refusal to attend and participate in physical education classes. The plaintiffs also seek compensatory and punitive damages in the aggregate amount of $120,000. Federal jurisdiction is invoked under 42 U. S.C. § 1983.

At a hearing on the plaintiffs' application for a temporary restraining order on November 14, 1975, the defendants, without a formal order of the court, permitted Yvonne to return to classes pending further hearing on the merits, which was held on November 28, 1975. In the interim a public meeting of the school board was conducted where the plaintiffs and their attorney were afforded a second opportunity to present the reasons for Yvonne's refusal to attend physical education classes, to present evidence in opposition to the school's policy of establishing physical education as a required course of study and to show cause why Yvonne's suspension from school should be rescinded. After hearing the plaintiffs and their attorney, as well as other interested persons in attendance, the school board voted to continue its policy of requiring all seventh grade students to attend classes in physical education and to continue Yvonne's suspension from the school until she attended and participated in physical education classes as a required course in the school's scheduled curriculum. The evidence presented to the court establishes these facts.

At the opening of the school term in September last, Yvonne was enrolled as a student in the seventh grade. Prior to her enrollment, Yvonne and her parents received information which led them to believe that physical education class was a required course and such classes would be conducted two hours each week during the school year. It was contemplated that the daily hours assigned for physical education classes on two days each week would be available for a course designated as Language Arts during the remaining three days of the school week. Due to a curtailment in funds, the school board found it necessary to eliminate the Language Arts course. The principal Leon Babbie was authorized by the board to reconstitute the curriculum; he added three additional required hours of physical education to replace the eliminated course in Language Arts.

With the opening of the school year 1975–76 Yvonne attended all regularly scheduled classes except physical education. She is a determined young lady and has persistently refused to attend these classes. She announced that she would refuse to participate in the physical education program at any time in the future. Numerous conferences with Yvonne, her parents, her school guidance counsellor and the principal of MVUHS were to no avail. The only reason advanced by Yvonne was that she didn't like the course and that she preferred to spend her time in pursuit of academic studies. Yvonne won the support of her father in her persistent refusal to attend the physical education classes. He entertained a philosophical reason against compelling his daughter to attend classes against her choice. He interceded with the school administration and made a strong effort to persuade the school board to change physical education as a required course, but without success. Yvonne was permitted to remain absent from physical education classes until the next scheduled meeting of the board. Supervised study periods were substituted by the principal in lieu of physical education.

On September 18, 1975, at a meeting of the board of directors of MVUHS, Yvonne and her parents were given the opportunity to present their objections to the school's prevailing policy of mandatory participation in the physical education program for all grade seven students, unless the student was excused for reasons of health. No considerations of health or religious constraint were advanced by the plaintiffs. There was no claim of discriminatory practice or effect; no curtailment of expression was asserted. The only reason given by the plaintiffs at this meeting for Yvonne's behavior was to the effect that this student "should have every right to do only what she wanted to." [1] The board voted to continue physical education for first year students in the junior high school. It was explained that the program was necessary to the transition of seventh graders from elementary school, where there were frequent recesses, to secondary school where no recesses were scheduled. The superintendent of schools advised the plaintiff Kent Ouimette of the action taken by the board of directors.

In a subsequent communication, the principal of MVUHS made a further report of the action taken by the board in a letter to Yvonne's father. [2] The writing informed Mr. Ouimette that the principal had conferred with Yvonne on Friday, September 19, and on two different days the following week. At the principal's final meeting with Yvonne he informed the student that she would be denied admission to school if she elected to remain away from her class in physical education. The principal solicited Mr. Ouimette's cooperation to avoid the necessity of suspension. The solicitation was unheeded. Yvonne had remained out of school for approximately

1. Minutes of MVUHS board meeting, September 18, 1975, appended as exhibit to the complaint.

2.
MISSISQUOI VALLEY UNION HIGH SCHOOL
        R.F.D.–1 RTE. 78
    SWANTON, VERMONT 05488

24 September, 1975

Mr. Kent Ouimette
15 Jewett Street
Swanton, Vermont 05488

Dear Mr. Ouimette:

On Thursday last, 18 September, 1975, you and your daughter, Yvonne, were given the opportunity to present to the Board of School Directors of the Missisquoi Valley Union High School at its regularly scheduled meeting your objections to the present policy of mandatory participation in the physical education class for all grade seven students including your daughter, Yvonne, unless excused from same for reasons of physical illness.

The Board of School Directors upheld the policy and denied your request. You were so advised of same by the Superintendent of Schools in a letter dated Friday, 19 September.

Your daughter was also advised of the disposition of her request by the Board by me personally on Friday, 19 September, and again Monday and Wednesday of this week. She was further advised by me today, that she would be denied admission to school should she elect to remain away from her class in physical education. This is neither necessary nor advisable. Your cooperation in this matter will be appreciated.

Should there be any further questions concerning the above, please feel free to call.

Sincerely yours,
(s) ——————————
Leon F. Babbie,
Principal

cc: Supt. J. Robb
    Asst. Supt. D. Corey

six weeks when this action was brought to compel the defendants to terminate the suspension on the conditions imposed by the defendants.

At the hearing in this court, Yvonne's father enlarged upon the reason previously assigned for her refusal. It was pointed out that Yvonne experienced difficulty in changing from the class which immediately preceded physical education and in reaching the class which followed within the time allowed.[3] She also resented the lack of individual shower rooms and the resulting loss of privacy. Mr. Ouimette stressed his daughter's disinterest in competitive athletics, that compulsory participation would have an adverse emotional impact on his daughter's personality and would be detrimental to her scholastic efforts in other courses.

The policy of requiring all seventh grade students to participate in scheduled classes in physical education was adopted and has been continued in the interest of the physical well-being of the students affected. It is designed to encourage participation in athletics and to promote physical fitness by supervised recreation and exercise. Other considerations that entered into the decision to make physical education a required course were the encouragement of students to express culturally approved patterns of personal behavior and interpersonal relationships by participation in supervised athletics, sports and dance, and to foster an appreciation for good physical condition.

In addition to physical education, seventh graders are required to take cours-

es in English literature, mathematics, science and history. The persistent refusal of Yvonne to participate in the school's physical education program has inspired related recalcitrance in five of her classmates, who attend the class but decline to participate in the exercise or sports prescribed.

■ The problem presented by the refusal to attend the required physical education class scheduled by the school administration confronted the school administration with a disciplinary problem, rather than one of truancy from the school or from her assigned class. Yvonne Ouimette's refusal to attend the physical education class constitutes a wilful violation of the established rules and regulations of Missisquoi Valley Union High School. Yvonne has not been expelled from the school; she has been suspended until she resumes regular attendance at the required course of study in physical education. Before imposing this sanction on Yvonne, her parents were notified through personal conference. They were afforded an opportunity to be heard by the school board and were notified that suspension was a possible consequence of continued disobedience and were informed of the final action taken.[4] The court finds that the action of the defendants was not unreasonable, arbitrary or capricious. It was taken, after deliberation, as a means to deal with a sensitive problem that affected the orderly conduct of the school's educational program.

Although the complaint refers in broad terms to constitutional rights, the only right specifically articulated is—

---

3. At the hearing the defendants offered to accommodate this problem by scheduling Yvonne's physical education class for the last period each day.

4. The action taken by the defendants was consistent with the MVUHS policy regarding suspension:
   1. Suspension:
   A. A school Administrator may suspend a student or students from school for a period of time up to the time of the next regularly scheduled School Board Meeting.

B. Suspension may be for violation of school rules or such acts or behavior as is spelled out in V.S.A. Title 16, Chapter 25, sections 1161 and 1163 of the Vermont Education Laws.
C. Parents will be notified in writing of any suspension and are to be encouraged to contact the school to discuss the suspension.
D. During the period of suspension the student is not to be present in the school building or on school property.

"That at no time material hereto have the defendants given the plaintiffs a hearing or opportunity to be heard on the question of Yvonne Ouimette's exclusion from school."

The Vermont Constitution and the Vermont Education Law clearly establish the plaintiffs' legitimate claim of entitlement to a public education. Constitution of Vermont, Ch. II § 68; 16 V.S.A. § 1073. Attendance of a child of twelve is compulsory. 16 V.S.A. § 1126.

The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975).

■ While suspension is less severe than expulsion, any enforced interruption of the education process— ". . . is a serious event in the life of the suspended child. Neither the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary." *Id.* at 576, 95 S.Ct. at 737. Due process applies.

■ The essentials of due process are notice that disciplinary action is under consideration and an adequate opportunity for the student and her parents to present their side of the story. This includes the opportunity to listen to the explanation of the school authorities concerning the reasons for any disciplinary action that may be contemplated in the situation that confronts them. These precautionary measures, absent

an emergency situation, should precede removal. *Goss v. Lopez, supra,* at 582–584, 95 S.Ct. at 742.

■ Each of these requirements was fulfilled in Yvonne's temporary suspension, both at the initial hearing in September and at the second hearing on November 20, when the plaintiffs had the assistance of counsel. From the record it appears that both hearings were essentially fair. The process due the plaintiffs has been accorded them within the precepts of *Goss*. The court recognizes that the school board and the administration, in the action taken, were deciding on the validity of policy requirements which were imposed by the defendants. In this civil rights action under 42 U.S. C. § 1983, only the constitutional right to Due Process has been asserted. Once these requirements have been met, there is no remaining issue for decision.

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. (citations omitted), *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed. 2d 214 (1975).

■ The court is mindful that the deprivation of the opportunity to attend the regularly scheduled classes at the junior high school level is a serious loss to the young plaintiff in this action and

to her parents. But the deprivation in this instance is the product of the plaintiffs' choice, in what the court regards as a misguided effort to revise the curriculum to accommodate the wishes of the student and the educational philosophy of her father. While there is a legal entitlement to a public education provided by the State, free from impairment of protected liberties, there is no right under the paramount law to receive a public education on special terms and conditions designed by the student. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 216, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

As long as the prescribed courses of study do not trench on fundamental rights guaranteed by the paramount law, the plaintiffs' personal conflict with the defendants is beyond the court's reach. It was recently pointed out by Chief Judge Kaufman in *James v. Board of Education*, 461 F.2d 566, 573 (2d Cir. 1972) that " . . . courts consistently have affirmed that curriculum controls belong to the political process and local school authorities." The opinion goes on to quote from the Supreme Court in *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968):

> Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

Thus, in the case at hand, on the complaint presented, and the evidence which followed, the court's scrutiny of the defendants' action was limited to the demands of Due Process protected by the Fifth and Fourteenth Amendments. Since the court is persuaded that those requirements have been satisfied, judicial inquiry must end there, without further intrusion into the defendants' administration of the Missisquoi Valley Union High School, pursuant to powers conferred by the State. *See Lopez v. Luginbill*, 483 F.2d 486 (10th Cir. 1973),

*cert. denied* 415 U.S. 927, 94 S.Ct. 1436, 39 L.Ed.2d 485 (1974); *Davis v. Ann Arbor Public Schools*, 313 F.Supp. 1217 (E.D.Mich.1970).

*The plaintiffs' request for injunctive relief is denied; the action for compensatory and punitive damages falls with the denial of equitable relief. The Clerk will enter an order of dismissal.*