Jerry ROBINSON, by his court-appointed Attorneys and Advocates, on behalf of himself and others similarly situated, Plaintiffs,

v.

Mary Lee LEAHY, acting director, Illinois Department of Children and Family Services, et al., Defendants.

UNITED STATES ex rel. Jerry ROBINSON, Petitioner,

v.

Allyn SIELAFF, Director of Corrections, and Jay Robert Webber, Administrator of Field Services, Illinois Department of Corrections, Respondents.

No. 73 C 1939.

United States District Court, N. D. Illinois, E. D.

Oct. 8, 1975.

John D. Shullenberger, James M. De Zelar, Joan D. Levin and Roger B. Derstine, Chicago, Ill., for plaintiffs.

John Dienner, III, Asst. State's Atty., Richard Ryan, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

Plaintiff Jerry Robinson has brought a broad ranging class action civil rights complaint [1] concerning the interaction of various institutions of the State of Illinois with juveniles. The treatment of plaintiff as a ward of the state, in need of psychiatric and counselling help, and as a juvenile being adjudicated as delinquent, has been alleged to have been carried out so as to offend the federal constitution. The relief sought is equally broad, including damages, declaratory and injunctive relief, and a writ of habeas corpus.

Defendants have filed a motion to dismiss which raises the following issues: whether the complaint states a cause of action against the state defendants; whether the allegations of the complaint, taken as true, state a basis for declaratory relief under 28 U.S.C. § 2201; whether the writ of habeas corpus is unavailable to plaintiff because of his failure to exhaust state remedies as required by 28 U.S.C. § 2254; whether some of the equitable relief requested must be treated as equivalent to the writ of habeas corpus; and whether the injunctive relief requested would be contrary to the doctrine of comity set forth by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and succeeding cases. For the reasons that follow, the defendants' motion will be granted in part and denied in part.

*Allegations*

For the purpose of resolving the pending motion, the court takes all the allegations of the complaint as true. Plaintiff was adjudicated a ward by the Juvenile Division of the Circuit Court of Cook County at the age of three. Subsequently, he spent six and one-half years at two residential institutions,[2] at least one of which was designated for emotionally disturbed boys. He was then diagnosed as being in need of psychiatric treatment and of a protective residential environment.

Plaintiff later came to live with his father; afterward he lived at a tempo-

---

1. This opinion will refer to the complaint and the subsequently filed amended complaint as the "complaint".

2. Randall House and Lawrence Hall.

rary shelter care facility maintained by the Illinois Department of Children and Family Services, and was then admitted to the Tinley Park Mental Health Center. He was released from that institution upon his own request. At that time he was about fifteen years old,[3] and presumably still a ward of the state. Plaintiff then again resided with his natural father, until the father charged him with theft, following which a petition was filed asking the Juvenile Division of the Circuit Court of Cook County to declare plaintiff to be delinquent.

At the proceeding in the Juvenile Division, Judge Navin appointed a Public Defender to represent the plaintiff. Plaintiff then admitted the theft although he had not been informed by either counsel or the judge as to the consequences of his admission, nor was he informed that he could remain silent and receive the panoply of rights associated with an adjudicatory hearing.

Although no finding of probable cause was made, nor any finding which would otherwise have justified detaining the plaintiff, he was held in custody by the court for almost four weeks, during which time he was afforded a psychiatric interview that lasted less than one hour. At the end of the four week period, plaintiff was committed to the Illinois Department of Corrections, partly on the strength of the psychiatric report. No finding of delinquency was formally made.

Throughout the period the complaint outlines, plaintiff had a guardian through the Illinois Department of Children and Family Services, or its governmental predecessor. Plaintiff challenges the manner in which the guardianship was carried out with respect to the treatment which was selected for him, in view of the diagnostic or other information available to the guardian. Plaintiff similarly challenges the practices of Juvenile

Division judge, and of the Public Defender's Office regarding the proceedings, detention, and commitment which plaintiff has undergone. The practices of the Juvenile Division, Public Defender's Office, and of the Department of Children and Family Services are alleged as ongoing with respect to plaintiff's class.

Plaintiff asks the court to declare the practices of defendants as violative of the equal protection and due process clauses of the Fourteenth Amendment, that defendants be enjoined from continuing these practices, that records of the delinquency admissions or findings [4] be expunged, and that each category of defendants (the Juvenile Division, the Public Defenders Office, the Illinois Department of Children and Family Services) present plans to this court showing that their constitutional and Illinois statutory duties are being properly carried out regarding plaintiff and his class, so as to reduce the likelihood of a recurrence of the violations plaintiff has sustained.

I.  Does the Complaint State a Cause of Action?

██ Plaintiff cites several Illinois statutes [5] which supposedly indicate state responsibilities that have not, under these allegations, been met. While the court is hesitant to dismiss any aspects of the complaint for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6), it should be noted that a failure to follow the dictates of a state statute does not, by itself, constitute a civil rights violation. *See Chism v. Price,* 457 F.2d 1037 (9th Cir. 1972); *Dorsey v. NAACP,* 408 F.2d 1022 (5th Cir. 1969); *Brosten v. Scheeler,* 360 F.Supp. 608 (N.D.Ill.1973), *aff'd* without opinion, 495 F.2d 1375 (7th Cir. 1974). Plaintiff does not allege any discrimination whatsoever to have taken

---

3. Plaintiff was born in 1958.

4. In the alternative, plaintiff seeks a new adjudicatory hearing.

5. 23 Ill.Rev.Stats. §§ 5001, 5005; 37 Ill.Rev. Stats. §§ 701–2, 701–11, 701–12, 705–7, 705–10.

place. Consequently, the complaint must rise or fall according to the existence of a constitutional right to the treatment plaintiff would contend he should have gotten. Fundamental fairness requires a constitutional right to be apprised of the serious consequences of an admission at a juvenile proceeding, particularly where the state has appointed a lawyer in whom the juvenile is likely to place great trust. *See In Re: Gault*, 387 U.S. 1, 34–42, 47–57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *See also U. S. v. Watts*, 513 F.2d 5 (10th Cir. 1975); *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970).

■ The law has by no means settled the question of the existence of a constitutional right to treatment which may flow from the function of the state in the life of a ward or even of an inmate of an institution. The Supreme Court has thus far declined a general discussion of the matter, and has considered the existence of such a right only in the context of an infringement upon liberty.[6] Other judicial considerations of the matter have also occurred in the context of an involuntary placement which infringes liberty. *Wyatt v. Anderholt*, 503 F.2d 1305 (5th Cir. 1974) (civilly committed mental retardates in state school); *Nelson v. Heyne*, 491 F.2d 352 (7th Cir. 1974) *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1975) (medium security correctional institution for juveniles); *Morales v. Turman*, 364 F.Supp. 166 (E.D.Tex.1973); *Martella v. Kelley*, 349 F.Supp. 575 (S.D. N.Y.1972). The right, however, may be considerably broader, as the following language by the late Judge Kiley in *Nelson v. Heyne, supra* may indicate:

"When a state assumes the place of a juvenile's parents, it assumes as well the parental duties, and its treatment of its juveniles should, so far as can be reasonably required, be what proper parental care would provide." 491 F.2d 360.

Further briefs from the parties directed squarely to the scope of this right, the extent to which mere wardship, and actual involuntary institutional commitment trigger the right, will aid this court in presiding over this litigation, and particularly in fashioning the scope of prospective relief, should such relief be justified. Nonetheless, the court finds that the complaint states a cause of action with regard to the state's treatment of plaintiff's case. It should be emphasized, however, that, depending on the facts brought out, retrospective monetary relief may address a limited span of time, given the public nature of the defendants and the very nascent quality of this law. *See Slate v. McFetridge*, 484 F.2d 1169, 1174 (7th Cir. 1973); *Collins v. Bensinger*, 374 F.Supp. 273 (N.D.Ill.), *aff'd* without opinion, 506 F. 2d 1405 (7th Cir. 1974).

Given the court's determination that a cause of action has been stated, declaratory relief under 28 U.S.C. §§ 2201, 2202 is properly requested by the complaint.

II. Is the Writ of Habeas Corpus Foreclosed By Failure to Exhaust State Remedies?

■ Part of plaintiff's complaint centers around the procedure by which he made an admission which presumably contributed to his being committed to the Illinois Department of Corrections. As the admission is allegedly constitutionally infirm, plaintiff wants the *effect* of the admission to be erased, namely the record of the admission, and the continuation of his commitment. The issue is not moot for plaintiff, even though his commitment now consists only of parole. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Parole is considered a kind of confinement, for purposes of this discussion.

■■ Where plaintiff seeks relief from the duration or fact of confine-

---

6. " . . . the mere presence of mental illness does not disqualify a person from preferring his home to the comforts of an institution." *O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975).

ment, a court must construe the complaint as a petition for writ of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), *accord, O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed. 2d 674 (1974); *Cruz v. Skelton,* 502 F. 2d 1101 (5th Cir. 1974). This court so construes Count III of the complaint. As such, relief cannot be forthcoming, under 28 U.S.C. § 2254(b) unless the available state remedies for the confinement have been exhausted as of the time the complaint is filed. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *accord, Humphrey v. Cady,* 405 U.S. 504, 516, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *U. S. ex rel. Owen v. Twomey,* 508 F.2d 858 (7th Cir. 1974).

■ The exhaustion issue here is whether, at the time the complaint was filed, the plaintiff could have appealed the commitment in a state proceeding. The commitment was ordered June 1, 1973. The complaint was filed in July, 1973, more than thirty days, but less than six months from the date of the commitment. Notwithstanding the fact that plaintiff alleges he was not informed by the Juvenile Division judge that the commitment could be appealed if timely notice was filed, there was available a late appeal, during this time interval, under 110A Ill.Rev.Stats. § 606 (c) which plaintiff's attorney could have utilized. Plaintiff has not contended he was unaware of this section,[7] but rather that its application to him was so uncertain and thereby futile, so as to make the use of it unnecessary for exhaustion. *See, e. g., Allum v. Twomey,* 484 F.2d 740, 743 (7th Cir. 1973). In this regard, plaintiff is in error. Section 606(c) petitions for leave to file late appeals have been granted almost as a matter of routine, even as to juveniles. *In Re Owens,* 51 Ill.2d 583, 283 N.E.2d 892 (1972). While such petitions are addressed to the discretion of the state appellate court,

*People v. Hardaman,* 59 Ill.2d 155, 319 N.E.2d 800 (1974), they are very liberally treated. *People v. Brown,* 54 Ill.2d 25, 294 N.E.2d 267 (1973). Plaintiff has cited neither reason nor precedent to the contrary. The failure of plaintiff to utilize § 606(c) has prevented this case from having the one ingredient that might persuade this court to consider the petition—presentation of the admission question to some Illinois state appellate or supreme court. *U. S. ex rel. Owen v. Twomey, supra, see also U. S. ex rel. Adams v. Bensinger,* 507 F.2d 390 (7th Cir. 1974), *cert. denied* 421 U. S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 789 (1975). The court thus finds itself compelled to dismiss the petition for the writ of habeas corpus. *Albertson v. Johnson,* 440 F.2d 1201 (6th Cir. 1971); *Williams v. Nelson,* 431 F.2d 932 (9th Cir. 1970).

III. Does the Dismissal of the Petition For Writ of Habeas Corpus Preclude Consideration of the Equitable Relief Otherwise Requested?

■ ■ Defendants have argued, in correct anticipation of this court's dismissal of the petition for the writ of habeas corpus, that injunctive relief which would have essentially restated the writ, is similarly barred. It has generally been true that a litigant cannot avoid the exhaustion requirement merely by changing the form, as opposed to the substance, of the relief requested. *E.g., Scruggs v. Henderson,* 380 F.2d 981 (6th Cir. 1967); *Hogan v. Lukhard,* 351 F.Supp. 1112 (E.D.Va.1972). A 42 U. S.C. § 1983 cause of action is ordinarily not subject to the same exhaustion requirement of § 2254(b) which could arise out of the same factual setting. It was the intention of Congress, however, that the exhaustion requirement apply in this situation, since § 2254 so specifically attends relief that shortens confinement. The overlapping of these remedies should not operate to allow

7. Cf. *U. S. ex rel. Green v. Pate,* 411 F.2d 884, 886 (7th Cir. 1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 584, 24 L.Ed.2d 510, *reh. denied,* 397 U.S. 929, 90 S.Ct. 936, 25 L.Ed.2d 111 (1970).

plaintiff to avoid an initial state court determination of the federal problem. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■■■ While articulating these rationales for exhaustion, the Supreme Court was careful to note that conditions of confinement could be simultaneously litigated, under § 1983, without satisfying the exhaustion stricture of § 2254. *Preiser v. Rodriguez, supra,* 411 U.S. 499, n. 14, 93 S.Ct. 1827. The problem suggested by this case is that where a statement of facts embraces both habeas corpus and civil rights issues, and where a writ of habeas corpus is unavailable, do the same rationales preclude the granting of relief that does not address itself to the duration or legality of plaintiff's own confinement? The problem was definitively resolved by the Supreme Court itself in the succeeding case of *Wolff v. McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974). The Supreme Court there held that prisoners seeking restoration of good time credits were not foreclosed from declaratory or injunctive relief which did not specifically shorten their confinement, even if they had not completed exhaustion under § 2254:

> "The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under *Preiser.* But the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U. S., at 499, n. 14, 93 S.Ct., at 1841. Respondent's damage claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declara-

tory judgment as a predicate to a damage award would not be barred by *Preiser;* and because under that case, *only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief and otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations."* 94 S.Ct. 2974. (footnote omitted) (emphasis added).

■■■ Plaintiff cannot, through this litigation, obtain a declaration that his very confinement is illegal. Neither can he hope to obtain an injunction requiring his release from conditions of parole. He can, however, as a class representative, adduce evidence that could possibly justify this court's equitable intervention against ongoing unconstitutional practices he alleges. In particular, the dismissal does not necessarily foreclose the court from addressing the process by which admissions are accepted and by which juveniles are advised as to the consequences.[8]

IV. Does the Injunctive Relief Requested Represent an Intrusion Into State Processes Which is Barred by Comity?

■■■ At the request of this court, the parties have submitted briefs which examine the propriety of federal intervention with the state court processes involved in the adjudicatory proceedings plaintiff experienced. The court has concluded that the relief requested is not precluded by the doctrine of comity.

It may be possible for plaintiff to prove facts which would justify this court's considering a plan submitted from the Juvenile Division, and from the Cook County Public Defenders Office, which could address the problem of informed admissions by juveniles.

Defendants urge that the requested relief would be contrary to language in the

---

8. For this reason, plaintiff is not inherently unsuited to be a class representative.

■■■■■■

recent case of *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The Court of Appeals had directed the District Court to consider injunctive relief against state judicial officers (magistrates, prosecutors and judges) to address an alleged pattern of racially discriminatory arrests, bail conditions, prosecutions, and sentences. The Supreme Court reversed, on the ground that the failure of the named plaintiffs in that case to allege that any of them had actually suffered from the wrongs alleged removed the case or controversy element of jurisdiction required by Article III of the constitution. Without such an allegation of injury, a court would be giving an advisory opinion. A similar defect in that complaint was the failure to allege specific pending or future injury to the named plaintiffs, through the alleged constitutional violations.

However *O'Shea* continued its discussion to consider the propriety of the injunctive relief the Court of Appeals thought available to the District Court. While the majority expressly disapproved any "ongoing federal audit of state criminal proceedings" [9] this disapproval came where the state laws being enforced were seemingly valid. Moreover, those state shortcomings that might have been addressed by such injunctive relief were by nature peculiarly difficult to redress. Sentencing, conditions of bail, and the decision to prosecute are all discretionary decisions. As Mr. Justice Douglas pointed out in dissent,[10] these sorts of decisions are virtually unreviewable, making the injury claimed by plaintiffs irreparable. Irreparability, however, has not been contested in the present case. The *O'Shea* majority had not focussed on the irreparable injury requirement as a bar to relief; it was concerned with the difficulty of supervising the requested relief, and the damage adequate supervision would do to the comity between state and federal courts so carefully protected

in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. The relief here requested does not necessarily carry with it the obstacles present in *O'Shea.*

Relief of a comparable nature was approved by the Supreme Court in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) a case subsequent to *O'Shea.* There, the District Court had ordered probable cause hearings to proceed weeks of pretrial detention in Dade County, Florida. The District Court also ordered the submission from the state court of a plan for such hearings. The Court of Appeals pointed out that there was no injunction against state proceedings—merely a requirement to add an extra hearing. *Pugh v. Rainwater,* 483 F.2d 778, 781 (5th Cir. 1973).

This court also asked the parties to consider the Second Circuit's opinion in *Wallace v. Kern,* 481 F.2d 621 (2d Cir. 1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974) which defendants assert is in support of their position. That court refused, on grounds of comity, to intervene in state proceedings to the extent necessary to organize the scheduling of pro se prisoner petitions in court, and to organize the allocation of counsel to indigents. The court also based its refusal for part of its decision on the absence of state action by the Legal Aid Society. However, the Second Circuit issued a further opinion in the case, reported at 2 Cir., 499 F.2d 1345. The constitutional right involved was that for a speedy trial, as delineated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The case by case analysis of *Barker* made simple injunctive relief unwieldy, and amounted, in the view of the Second Circuit, to establishing rules of practice for the state courts. 499 F.2d 1351. This court finds for the reasons discussed above in connection with *O'Shea* and *Gerstein* that *Wallace* is not applicable as precedent for the present case.

---

9. 414 U.S. 500, 94 S.Ct. 678.

10. Id. at 683.

## CONCLUSION

For the reasons stated, the court finds that the complaint states a cause of action, that the petition for a writ of habeas corpus (Count III) must be dismissed, and that the injunctive relief requested is barred neither by the dismissal of the writ nor by considerations of comity. Except as to Count III, the motion to dismiss is denied.