**David HILLMAN, an infant, by J. C. Hillman, his father and next friend, Plaintiff,**

**v.**

**Euell ELLIOTT et al., Defendants.**

**Civ. A. No. 77–0006.**

United States District Court, W. D. Virginia, Big Stone Gap Division.

Aug. 22, 1977.

Gary S. Bradshaw, Bradshaw & Morris, Ltd., Big Stone Gap, Va., A. M. Shelton, Gate City, Va., for plaintiff.

Cecil D. Quillen, Quillen & Carter, Gate City, Va., for defendants.

## OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Plaintiff, David Hillman, an infant, by J. C. Hillman, his father and next friend, filed this suit pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) against the defendants, the Superintendent of Scott County Schools, the principal of Gate City High School, and the members of the Scott County School Board. Plaintiff alleges that defendants' actions to suspend plaintiff for alleged violations of the Disciplinary Code of the Scott County School System deprived him of liberty and property without due process of law as guaranteed to him by the Fourteenth Amendment to the Constitution of the United States. Plaintiff seeks an order expunging from his records any reference to the disciplinary actions taken against him, an injunction prohibiting defendants from suspending or otherwise disciplining plaintiff, and recovery of his costs and attorney's fees.

After this suit was filed, the parties stipulated that, in the event the court proceedings were disposed of in favor of defendants, plaintiff would serve his three-day disciplinary suspension during the regular 1977–78 school term. Trial of this case was held before the court on July 15, 1977, and on the basis of the evidence presented, the court makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

*Findings of Fact*

Plaintiff is a student at Gate City High School, Gate City, Virginia. He was charged by the faculty and administration with violating certain sections of the Disciplinary Code of the Scott County School System on or about November 2, 1976. Specifically, the charges were being disrespectful to a teacher and using abusive language to fellow students.

On November 2, 1976, plaintiff's parents received notice of plaintiff's three-day suspension for the above charges from the principal of Gate City High School. The principal also gave plaintiff a copy of the Disciplinary Code of the Scott County School System. Plaintiff, along with his mother, met with the principal in his office to discuss this matter, and plaintiff admitted that he had used abusive language to one student. By letter dated November 11, 1976, plaintiff's parents were informed that the visiting teacher had upheld the school administration's decision to suspend plaintiff. Plaintiff's parents were then notified of a hearing on the recommended suspension to be held on November 30, 1976 at the School Board office. Plaintiff's parents did not attend the hearing but were advised that the School Board had upheld plaintiff's suspension.

There being some uncertainty about whether defendants had followed their Disciplinary Code regulations for suspending a student,[1] defendants started the discipli-

nary process over by notifying plaintiff's parents by letter dated January 4, 1977 that David was charged with being disrespectful to the faculty of the Scott County School System, using insulting words, gestures, and profanity while under school authority, and being disruptive of the orderly and efficient operation of the Scott County School System. This letter also informed plaintiff's parents of a hearing to be held in the principal's office.

After this hearing and several continuations thereof, the principal suspended plaintiff for three days subject to appeal. Plaintiff appealed to the visiting teacher, and the Sheriff of Scott County served him and his parents with notice of the hearing. They appeared at this hearing to make due process objections and then withdrew. The visiting teacher upheld the suspension.

Plaintiff and his parents then appealed to the Scott County School Board. Again they were notified of the hearing by the Sheriff; they attended only to make due process objections and walked out. After being notified that the Board had upheld the suspension, plaintiff filed suit in this court.

Plaintiff contends that, throughout all of these proceedings, he was denied due process. Defendants deny this allegation; however, at the trial, defendants stipulated that the proceedings prior to January 4, 1977 were technically defective of due process. Defendants have allowed plaintiff to re-

---

1. Disciplinary Code of the Scott County School System

PROCEDURE FOR SUSPENSION:
1. Students will be notified of the specific rule that they are alleged to have violated and of the facts and circumstances surrounding the violation.
2. Students will be notified by the Principal of a time, date, and place for hearing which will be held. There are some situations in which prior notice and hearing "cannot be insisted upon:"
 (a) in the case of students whose presence poses a continuing danger to persons or property; and
 (b) in the case of students whose presence poses an ongoing threat of disrupting the academic process.
3. Students may bring their parents and/or representatives to this hearing, at which

hearing the students will be allowed to examine witnesses, speak in their own behalf, and present evidence.
4. In the event of suspension by the Principal, students will have the right upon request to a review of the decision by the Division Superintendent or his designee. Such request shall be within two days of Principal's decision, and the hearing shall be held within three days of such request.
5. In the event that the suspension is upheld by the Division Superintendent or his designee, the student may appeal such said action to the School Board or committee thereof. The request for review shall be within two days after the decision of the Superintendent or his designee. Such hearing shall be held at the next regular meeting, or, in an extraordinary case, a special meeting called for that purpose.

main in school during the entire period since he was charged in November, 1976, with violating the Disciplinary Code.

### Conclusions of Law

#### I.

The first issue confronting this court is whether the rule enunciated by *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), is applicable to a three-day suspension from school. The Court in *Goss* held that "[a] 10-day suspension from school is not *de minimis* . . . and may not be imposed in complete disregard of the Due Process Clause." *Id.* at 576, 95 S.Ct. at 737. This issue turns on whether or not a three-day suspension is *de minimis.*

■ "[T]otal exclusion from the educational process for more than a trivial period . . . is a serious event in the life of a suspended child." *Id.* at 576, 95 S.Ct. at 737. A suspension is noted on a child's school records, and these records are often used by potential employers and admissions personnel at colleges and universities. Any time a child misses his classes, he is deprived of a learning experience that cannot be repeated. This court is compelled to find that a three-day suspension is not *de minimis* ; therefore, due process is required in the suspension of this plaintiff.

#### II.

■ Having decided that plaintiff is entitled to due process, this court must determine if due process, as outlined by *Goss,* was afforded plaintiff. In *Goss,* the court held that due process required that a student be given oral or written notice of the charges, an explanation of the evidence against him if he denies the charges, and an opportunity to present his version of the incident.

In the instant case, subsequent to January 4, 1977, plaintiff and his parents received written notice of the charges and were advised of a hearing before the principal at which they had the right to be present, to have a representative with them, and to speak in plaintiff's behalf.

Plaintiff was afforded two appeals, both of which he utilized. At all of the hearings, he never presented any evidence although he had that right. In addition, this court has intervened in this matter at plaintiff's initiation.

These facts indicate that plaintiff received the full panoply of procedural rights. Nevertheless, plaintiff challenges his suspension on three procedural due process grounds: first, he contends that the procedural defects that occurred prior to January 4, 1977 tainted the whole process to the degree that the due process afforded after January 4, 1977 did not cure the taint; second, plaintiff alleges that the principal was not a neutral hearing officer; and, third, he asserts that defendants failed to follow their own rules for suspending a student. ·

■ The initial defects that plaintiff contends tainted the later proceedings were defendants' failure to give notice and to hold a hearing prior to suspending plaintiff and also prior to the visiting teacher's decision to uphold the suspension. Despite these defects, plaintiff cannot insist that he did not have some kind of notice and hearing in the early stages of these proceedings because he and his mother had a conversation with the principal in November, 1976 at which time plaintiff admitted to having used abusive language to one student.

■ Courts have indicated that due process in the school setting does not have to adhere to prescribed patterns. The court in *Bignall v. North Idaho College,* 538 F.2d 243, 248 (9th Cir. 1976), stated that "informal notice if it grows out of the prescribed grievance procedure, may satisfy due process." In *Coffman v. Kuehler,* 409 F.Supp. 546, 551 (N.D.Tex.1976), the court held that a visit by the student's father to the principal within one or two hours after the suspension satisfied the due process requirement that a hearing be held as soon as practicable. While it is unclear in the instant action exactly when plaintiff and his mother met with the principal, plaintiff was apparently informed of at least one charge

and had the opportunity to present his version since he admitted that he violated that rule. That no time elapsed between giving notice and holding the hearing does not raise procedural problems. *Goss,* 419 U.S. at 582, 95 S.Ct. 729.

■ Even if the meeting with the principal did not afford plaintiff any initial due process, this court agrees with the proposition that "[t]he concept of due process is premised upon fairness and reasonableness in light of the totality of circumstances." *Ingraham v. Wright,* 525 F.2d 909, 917 (5th Cir. 1976). Besides the due process that plaintiff received at the outset of this case, he was also notified of a hearing before the school board at which neither he nor his parents were present. Moreover, after January 4, 1977, plaintiff was afforded ample due process by the defendants as an effort to correct any defects that may have occurred. Looking at the "totality of the circumstances," this court finds that the initial defects, if any, did not taint the later proceedings so as to deny plaintiff due process.

■ Plaintiff next alleges that the principal's prior involvement in the disciplinary proceedings made it impossible for him to be an impartial hearing officer. The principal made the initial decision to suspend plaintiff and then served as the hearing officer at the first hearing afforded after January 4, 1977, at which he decided again to suspend the plaintiff.

No real evidence was presented to indicate that the principal was actually biased. Rather, plaintiff seems to be objecting to the numerous contacts that the principal has had with this case at its various stages. However, courts have not found such involvement objectionable. In *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974), some of the members of the hospital Joint Conference Committee, responsible for making the final decision whether or not to revoke plaintiff's hospital privileges, had participated in the Governing Board's initial revocation of his privileges. The court viewed the action of the Governing Board as an "administrative step in bringing the issue to a head," *Id.,* at 519, and the members were not disqualified to sit on the Joint Conference Committee. The court stated the test for judging the impartiality of a hearing officer to be:

> that the bias and familiarity with a case, which will disqualify, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.* (1966) 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 . . . .

*Id.* at 517.

The instant situation is analogous to a court that has to rule on various motions before a trial. The judge is not precluded from sitting at the trial because of his previous exposure to the case. The hearing in front of the principal was but one of several "administrative steps" available to plaintiff. To be denied due process, plaintiff must show prejudice by the principal stemming from a source other than knowledge of the case.

■ Likewise, the fact that the hearing officer was also an official of the Scott County School System does not constitute a denial of due process. "[C]ourts have balanced the need for an objective decision-maker against the costs of employing outside people, administrative efficiency and the body's having some expertise in institutional structure," *Bignall,* 538 F.2d at 247, and have allowed boards of education and boards of trustees to hold hearings about firings of faculty by administrators. *Vance v. Chester County Board of School Trustees,* 504 F.2d 820 (4th Cir. 1974); *Brubaker v. Board of Education,* 502 F.2d 973 (7th Cir. 1974); *Swab v. Cedar Rapids Community School District,* 494 F.2d 353 (8th Cir. 1974). This court finds no reason why a principal cannot also sit as a hearing officer in a school discipline case. Consequently, plaintiff was not denied his due process right to an impartial hearing officer.

Plaintiff's last allegation is that he was denied due process because, at all times, the

defendants failed to follow their own rules of suspension. The Disciplinary Code requires that a student will be notified "of the facts and circumstances surrounding the violation." [2] Plaintiff contends that, while he was advised of which rules he was charged with having violated, he was never advised of the "facts and circumstances surrounding the violation."

The rights afforded plaintiff under the Disciplinary Code of the Scott County School System are broader than due process requires according to *Goss*. For example, in *Goss* the Court did not suggest that a student had to be given detailed notice of the "facts and circumstances surrounding the violation," but only required that a student be notified of the charges against him.

 Defendants assert in their answer that, if this court finds that plaintiff was afforded *Goss* due process, then the federal court is without jurisdiction to decide a claim that defendants violated their own rules because such a claim would be a state law issue. The court disagrees with this proposition because plaintiff may still have a liberty and property interest at stake. In some situations, due process could be denied where rules of procedure are set forth establishing certain rights and then such rules are not followed.

 While it is true that the "facts and circumstances surrounding" the charges against plaintiff were never formally stated in writing, plaintiff, who was assisted by counsel and his parents, never asked for the specifics of the charges. On three occasions, he, his parents, and his attorney chose to walk out of the proceedings rather than use the opportunity to inquire about the names of witnesses and statements made by them, to cross-examine witnesses produced by defendants and to present evidence on plaintiff's behalf. In addition, the principal explained the charges to plaintiff and his mother at the meeting in the principal's office. Since plaintiff admitted to using abusive language to one student, he must have understood the "facts and circumstances surrounding" the charges, and if he did not, he had every opportunity to ascertain anything that was unclear.

The Supreme Court in *Goss* did not require a formal hearing with all the attendant rights afforded to one in a trial-type setting. Rather the Court was more concerned "that there be at least an informal give-and-take between student and disciplinarian . . . ." 419 U.S. at 584, 95 S.Ct. at 741. Defendants confronted plaintiff with the charges, but plaintiff never requested defendants to supply any further details. Even in the most formal court proceedings in criminal cases, a defendant is simply notified of the general nature of the charges and has no right to receive a bill of particulars until he asks for them. Technical due process rights are not required before suspending a student.

Therefore, the court finds that plaintiff was afforded due process as required by *Goss,* and defendants, by substantially complying with their disciplinary rules of suspension which go well beyond the constitutional minimum, satisfied the due process clause. To hold otherwise would place an undue burden on defendants and other school systems that are willing to make an extra effort to avoid unfair disciplinary actions by setting forth guidelines that grant the students rights beyond those that are constitutionally mandated.

Having concluded that the due process clause was not violated by defendants, the relief requested by plaintiff is denied, and this cause is ordered dismissed and stricken from the docket.

2. Disciplinary Code of the Scott County School System—Procedure for Suspension: Rule 1, supra at fn. 1.