Clyde LONG, Jr., on behalf of himself and all other persons similarly situated, Plaintiffs,

v.

THORNTON TOWNSHIP HIGH SCHOOL DISTRICT 205, Cook County, Ill., a Quasi-Municipal Corporation, William Augustus, Individually and in his capacity as Superintendent of District 205, Jack Curless, Individually and in his capacity as Assistant Superintendent of District 205, Henry Vandenberg, Robert Evans, Blanche Foxworthy, Fred Henning, Mielke Kairon, Leo Piernas, Robert Reese, and Susanna Nagell, Individually and in the capacity as members of the District 205 Board of Education, John Smith, Individually and in his capacity as Principal, Thornton High School District 205, Defendants.

No. 76 C 4250.

United States District Court, N. D. Illinois, E. D.

April 18, 1979.

Frederick J. Daley, Jr., John W. Moutoussamy, Harvey, Ill., for plaintiffs.

John H. Hager, Ralph Miller, Franke & Miller, Chicago, Ill., for defendants.

MEMORANDUM OPINION

FLAUM, District Judge:

This cause comes before the court on various motions of the parties. Plaintiff, a former student at Thornton Township High School, challenges his expulsion from school on the grounds that it violated his rights under the due process and equal protection provisions of the fourteenth amendment and rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* On January 21, 1977 the court denied plaintiff's motion for a preliminary injunction. In that opinion, the court declined to address certain state statutory grounds raised by plaintiff. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Before the court is plaintiff's motion for class certification. Fed.R.Civ.P. 23. In addition, the parties cross-move for summary judgment. Fed.R. Civ.P. 56. Inasmuch as the relevant facts are amply discussed in the memorandum and order denying the preliminary injunction motion, the court will not restate the facts surrounding the plaintiff's expulsion. For the reasons stated *infra,* the court certifies plaintiff's class and subclass. In addition, it grants defendants' motion for summary judgment on the due process question and reserves ruling on the title VI and equal protection questions.

I Class Certification

Plaintiff seeks declaration of a class pursuant to rule 23 of the Federal Rules of Civil Procedure. Certification of all students who are subject to the expulsion procedures is sought. In addition, he seeks certification of a distinct subclass: all black students who are subject to either higher rates of suspensions or expulsions or subject to more severe penalties than similarly situated white students who are guilty of the same conduct. After consideration of certain threshold issues, the court will consider the requirements under the rule.

In considering whether class certification is appropriate, the court notes that it is required to construe liberally the requirements for class actions in civil rights cases. This is so because such actions seek to end "discrimination on the basis of a class characteristic." *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1967) (Title VII). The burden is on the plaintiff to establish his right to a class. *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Amswiss International Corp. v. Heublein,* 69 F.R.D. 663 (N.D.Ga. 1975). However, in making the certification decision, the court makes no inquiry into the merits of the suit. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

a. Numerosity

"Consistent with his overall burden to show the prerequisites for a class action, the one who asserts the class must show some evidence or reasonable estimate of the number of class members." 3B Moore's Federal Practice, ¶ 23.05[3] (2d ed. 1978). *See, e. g., DeMarco v. Edens,* 390 F.2d 836 (2d Cir. 1968). To meet this burden, plaintiff need not allege the exact number or identity of the class membership. *Wolfson v. Solomon,* 54 F.R.D. 584 (S.D.N.Y.1972); *Fischer v. Kletz,* 41 F.R.D. 377 (S.D.N.Y. 1966). *See* Newberg, Class Actions § 1105h (1977). Generally, a good faith estimate is sufficient where it is difficult to assess the exact class membership. *See Brady v. Lac, Inc.,* 72 F.R.D. 22 (S.D.N.Y.1976).

Plaintiff cites certain statistics indicating that between the 1971–72 and 1974–75 academic years, 7,337 suspensions were ordered by defendants and that between the 1971–72 and 1976–77 academic years, there were 84 expulsions. This amount clearly satisfied the impracticability of joinder requirements for the general class. Of those suspended, 3,418 were black and 64 of the 82 students expelled were black. Thus, the numerosity requirement for the subclass has been met. *See generally,* 3B Moore's Federal Practice ¶ 23.05[1], at 23–155 (2d ed. 1978) (number exceeding 1000 is sufficient). *See, e. g., Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (class of forty).

b. Commonality

The second precondition or rule 23(a) is that there must be questions of law or fact common to the class members. As to the main class, the allegation that all students are subjected to an allegedly unconstitutional suspension and expulsion procedure is sufficient to meet the commonality requirement. In addition, the allegation of an alleged racially discriminatory policy is clearly common to the subclass.

Defendants contend that the requirement has not been met here for two reasons. First, they aver by virtue of plaintiff's charging other students guilty of the acts which resulted in his dismissal, his claim is not common to the other class members. Second, they argue that inasmuch as he charges his expulsion for the succeeding school year was wrongful, nis claim is rendered atypical. In so arguing, defendants miss the mark. The commonality requirement does not require that all questions of law and fact be identical. 7 Wright & Miller, Federal Practice and Procedure, § 1763, at 603 & cases cited therein.

> The test or standard for meeting the (a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

Newberg, Class Actions § 1110a, at 180–81. As to the general class here, the existence of the alleged defects in the expulsion procedures is an issue common to all class members. As to the subclass, the alleged operation of the racially discriminatory policy is common to all class members. *See, e. g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969).

The deviations of plaintiff's claim from those of the class proposed by defendants does not defeat a finding of commonality.

### c. Typicality

■ The typicality requirement refers to the nature of the representative's claim or defense and not to the specific facts from which it arose or to the relief sought. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and is based on the same legal theory." Newberg, Class Actions § 1115c, at 186. The plaintiff's interest is in complete conformity with the class member claims and hence the typicality requirement has been satisfied. Defendants' sole argument on this point appears to be that plaintiff's claim is unusual from the class members' claims. Applying the standard above, the fact that his claim is unusual does not render his claim atypical.

### d. Adequacy of Representation

■ In general, the adequacy of representation requirement of rule 23(a)(4) is met where the class representative does not have interests antagonistic to the other class members, where he has sufficient interest in the outcome of the litigation and his attorney is qualified, experienced and generally able to conduct the litigation. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (2d Cir. 1975); *Sullivan v. Chase Investment Services,* 79 F.R.D. 246 (N.D.Cal.1978); *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295 (D.Md. 1977). The class representative is only qualified if his interest in proving his claim will lead him to prove the claim of the remainder of the class. *Mersay v. First Republic Corp.,* 43 F.R.D. 465 (S.D.N.Y.

1968). Plaintiff clearly meets this requirement. Defendants do not challenge the adequacy of the representation of plaintiff's counsel.

■ Defendants' sole argument on this point is that because the factual and legal context of plaintiff's claim is so diverse, plaintiff will not represent the interests of the class. Such a contention is plainly without merit. The plaintiff alleges that he was victimized by defendants' alleged unfair expulsion procedures and, as a black, by a policy of suspending, expelling or otherwise punishing blacks more severely than similarly situated white students who are guilty of the same or similar conduct. In both instances, plaintiff will be furthering the interests of the class by proving the allegations of his complaint. Since this is the case, and there is no allegation that his attorney will not vigorously prosecute the claim, his claim meets the adequacy of representation requirement of subsection 23(a)(4).[1]

### e. 23(b)(2) Class

■ An action may be maintained only if in addition to the requirements of 23(a), one of the requirements of 23(b) is satisfied. As is apparent from the above discussion plaintiff has clearly alleged defendants in both the main class and the subclass have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). The motion as to both the main class and the subclass must therefore be granted. *See* Notes of Advisory Committee on Rules, 39 F.R.D. 69, 102 (1966); Newberg, Class Actions, § 1145. Accordingly, the court shall provisionally

---

1. The court notes the parties have not briefed the question of whether the plaintiff is an improper class representative because he is no longer enrolled in school. Inasmuch as he has sought monetary relief his claim is not moot. The defendants do not suggest he would be an inappropriate representative by virtue of the fact that he may no longer seek injunctive or declaratory relief. In the event the defendants

choose to raise the question, the court will reconsider the provisional grant of class certification. *Cf. Robinson v. Leahy,* 401 F.Supp. 1027 (N.D.Ill.1976) (claim of proposed class representative dismissed as moot and motion for class certification denied where class representative has no interest in the exclusive equitable relief requested).

certify the following classes: 1) all past or present students subject to the expulsion procedures; 2) all past or present black students who are subject to either higher rates of suspension or expulsions or subject to more severe penalties than similarly situated white students who are guilty of the same conduct.[2]

## II The Due Process Issue

The facts underlying plaintiff's due process claim were outlined in this court's opinion denying plaintiff's motion for a preliminary injunction. Plaintiff renews certain of his arguments considered in that motion here. He contends the following. First, his due process rights were violated by virtue of the fact he was not adequately notified of the nature of the charges, the name of the student he assaulted or the reason for his expulsion. Second, he charges his rights were violated by virtue of the fact that the hearing was not conducted by an impartial hearing examiner or tribunal. Third, he argues the punishment he received was a violation of the eighth amendment bar against cruel and unusual punishment and was otherwise unfair inasmuch as the board failed to consider less restrictive alternatives in meting out punishment. All of plaintiff's contentions concerning these alleged due process violations are without merit.

 As this court noted in its prior opinion and now holds, the substantial suspension period involved here could not have been imposed in complete disregard of the due process clause. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Black Students of North Fort Myers Jr.-Sr. High School v. Williams*, 470 F.2d 957 (5th Cir. 1972); *Hillman v. Elliott*, 436 F.Supp. 812 (W.D.Va.1977). *Goss* specifically held that:

> due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of

the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

419 U.S. at 581, 95 S.Ct. at 740. *See also M. v. Board of Education*, 429 F.Supp. 288 (S.D.Ill.1977). The Supreme Court has recently suggested that this standard applies to all suspensions of a student from public school for disciplinary reasons. *See Board of Curators v. Horowitz*, 435 U.S. 78, 85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). As this court noted, the school expulsion proceeding need not follow the formal procedures of a criminal case in order to pass muster under the due process clause. *Linwood v. Board of Education*, 463 F.2d 763 (7th Cir.), *cert. denied*, 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972). Due process must be determined by what is fair and reasonable in light of the totality of the circumstances. *Hillman v. Elliott*, 436 F.Supp. at 816. It is a flexible, pragmatic concept and "the goal of the procedures is to reach a substantively correct result at a minimum of cost." *Bignall v. North Idaho College*, 538 F.2d 243, 245–46 (9th Cir. 1976). Most significant within the context of the present case is the factor that the requisites are necessarily limited when the facts upon which dismissal is based are admitted. *Goss v. Lopez*, 419 U.S. at 581, 95 S.Ct. 729; *Betts v. Board of Education*, 466 F.2d 629, 633 (7th Cir. 1972) ("As to what process is due, it is important that the plaintiff unequivocally admitted the misconduct with which she was charged. In such a circumstance, the function of procedural protections in insuring a fair and reliable determination of the respective factual question . . . is not essential"). As noted in this court's prior opinion, plaintiff was informed prior to the hearing of the time, place and nature of the charges and was afforded an orderly hearing where he was represented by counsel.

 He contends the notice of the charges were defective on the ground that

---

**2.** Plaintiff's motion is denied to the extent it seeks to include in the class or subclass future victims of the allegedly unlawful practices. "[S]uch 'prospective' classes have been reject-

ed by the Supreme Court in *Mathews v. Diaz*, 426 U.S. 72–73 n.3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)." *Miller v. Motorola, Inc.*, 76 F.R.D. 516, 518 (N.D.Ill.1977).

he was not provided the name of the student assaulted. Specifically, he states he was misled by his school discipline record which states he was charged with assaulting Richard Lane, not Ralph Trent. The hearing notice stated he was charged with assaulting a Thornton student. A review of the transcript of the expulsion proceedings makes it apparent that plaintiff was not thereby prejudiced. The evidence at the hearing was uniform that he struck Ralph Trent with a yardstick. He admitted it. He presents no evidence that by virtue of the alleged defect in the notice he was unable to formulate a response to the charges. In *Keller v. Fochs*, 385 F.Supp. 262, 266 (E.D.Wis.1974), Judge Warren, reflecting on *Linwood*, stated that the notice requirement in this context is satisfied where it makes "specific as to which conduct was its subject and which conduct required explanation by appellant at the board hearing." The hearing notice in this case conformed with this standard. In addition, the *Linwood* notice read that the student "was charged with gross disobedience and misconduct for allegedly attacking and striking other students . . ." 463 F.2d at 765. The notice did not mention the names of the students assaulted. Such notice would have been sufficient had plaintiff denied assaulting anyone. Inasmuch as he admitted assaulting Ralph Trent, *a fortiori*, such notice was adequate.

Next, plaintiff contends that he was given no statement, either written or oral, of the reasons for his dismissal. *Linwood* squarely rejected the argument that a written opinion containing findings of fact was required by due process. 463 F.2d at 770. Plaintiff has not cited to the court any authority for the proposition that due process requires an oral statement of the reasons for the discharge and the court has been unable to find any. As noted above, the concept is a flexible one and in the absence of a showing of some prejudice the court cannot find the failure to afford a

formalism posited by plaintiff violates due process. It is clear that plaintiff was expelled for his participation in the assault on Ralph Trent. Due process requires no more.

Plaintiff contends the hearing panel and examining officer were not impartial. Plaintiff does not articulate in what manner the conduct of the hearing examiner or the panel reflected any bias. Both the tribunal and hearing officer are presumed to be unbiased. *Murray v. West Baton Rouge Parish School Board*, 472 F.2d 438, 443 (5th Cir. 1973). The facts of a particular case may, however, reflect such bias. *See, e.g., Sullivan v. Houston Independent School District*, 475 F.2d 1071 (5th Cir. 1973). Mere involvement with the case prior to hearing is not objectionable. *Hillman v. Elliott*, 436 F.Supp. at 816. "To be denied due process, plaintiff must show prejudice by the principal stemming from a source other than the knowledge of the case. . . . This court finds no reason why a principal cannot also sit as a hearing officer in a school discipline case." *Id.* Accordingly, in the absence of any allegation of prejudice or bias, the court finds no support for a finding of a denial of due process by virtue of the fact that school officials also sat on the hearing board or that the hearing examiner also operated as a prosecutor.[3]

Finally, plaintiff argues that the punishment of expulsion was excessive, cruel and unusual and was arrived at through an arbitrary and capricious process. Specifically, plaintiff alleges that normal disciplinary channels were forsaken in his case, that there were more acceptable alternatives to dismissal and that these alternatives were not considered. However, it has generally been held that in this context once the court finds plaintiff's rights to due process have been realized it must end its inquiry. *See, e.g., Ouimette v. Babbie*, 405

---

**3.** The court must balance "the need for an objective decision maker against the costs of employing outside people, administrative efficiency and the body's having some expertise in institutional structure." *Bignall v. North Idaho College*, 538 F.2d at 247. In the absence of a claim of prejudice, such balance shifts in favor of the procedure here challenged.

F.Supp. 525 (D.Vt.1975). "It is not the role of the Federal Courts to set aside the decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). In the absence of proof of a specific constitutional violation, this court is not empowered to overturn the discretionary judgment of a school administrator. *See also Graham v. Board of Education,* 419 F.Supp. 1214 (E.D.Okl.1976). Accordingly, summary judgment must be entered in defendants' behalf on the due process issue.

### III Title VI and Equal Protection

Plaintiff next contends that by virtue of the alleged discrimination defendants violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* Whether title VI provides for a private cause of action is an unsettled question. *See generally Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1977); *Cannon v. University of Chicago,* 559 F.2d 1063, 1080–83 (7th Cir. 1977) (opinion on rehearing), *cert. gr.,* 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159; *NAACP v. Wilmington Medical Center, Inc.,* 453 F.Supp. 280 (D.Del.1978). Cannon, which construed identical language under Title IV of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.,* found that there was not such private cause of action. Although it is true that *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1285–87 (7th Cir. 1977) held that where no administrative remedy is available, a private cause of action may be implied, the question has yet to be decided by the Supreme Court. A decision is forthcoming. Delay in this aspect of the parties' motion concerning title VI is thus appropriate pending outcome of the appeal in *Cannon* in the Supreme Court.

The court's decision to stay its ruling on the title VI question necessarily requires it to stay its ruling on the pending motion for summary judgment on the alleged violation of equal protection. It is well settled that this court should avoid ruling on constitutional questions when a nonconstitutional ground exists for resolving a case. *See Mandley v. Trainor,* 523 F.2d 415, 419 (7th Cir. 1975); *Chicago Teachers U. v. Johnson,* 421 F.Supp. 1261, 1264 n.1 (N.D.Ill.1976). Since the court may not have to face the issues presented under the equal protection claim, the court will forego ruling on it pending resolution of the title VI issue in *Cannon.*

Accordingly, plaintiff's motion for class certification is granted as to both the general class and the subclass. Defendants' motion for summary judgment on the due process issue is granted. Ruling on the equal protection claim and the title VI question is stayed.

It is so ordered.