Candace DIGGLES and Shirley Diggles Wynn, Plaintiffs,

v.

CORSICANA INDEPENDENT SCHOOL DISTRICT, et al., Defendants.

Civ. A. No. 3–79–0177–H.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 2, 1981.

Tom Mills, Dallas, Tex., for plaintiffs.

Earl Luna, Dallas, Tex., Larry O. Brady, Waco, Tex., for defendants.

## OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Defendants' Motion for Summary Judgment, filed October 14, 1981. Plaintiffs have not filed any response to the motion. The Court has considered the motion, briefs, depositions, exhibits, and pleadings on file and is of the opinion that Defendants' motion should be, and it is hereby, GRANTED.

This suit arises from the suspension of an eighth grade student, Candace Diggles, from the (Corsicana, Texas) Collins Middle School in February 1977; and from the failure of Defendant Corsicana I.S.D. to rehire her mother, Shirley Diggles Wynn, as a teacher's aide following her employment in the 1976–77 school year. The uncontroverted facts are as follows.

On February 10, 1977, a physical altercation occurred at the Collins Middle School between Plaintiff Candace Diggles and Defendant Shirley Megarity, a teacher at the school. Immediately following the incident, Ms. Diggles, Defendant Megarity, and some of the witnesses to the incident met with Assistant Principal, David Ross in the school office.[1] Later that afternoon, Plaintiffs and Defendant Megarity met with the school Principal Jim Compton, to discuss the incident. After hearing from the witnesses, Compton informed Plaintiffs of his decision to suspend Candace Diggles immediately and to recommend that she be suspended for the remainder of the school term.[2] The next day, Superintendent Culwell met with Plaintiff Wynn to discuss Principal Compton's recommendation.[3] Following that meeting, Culwell sent Mrs. Wynn a letter advising her that he agreed with the recommendation, and informing her of her daughter's right to a third party hearing and de novo appeal to the Board of Trustees. Attached to his letter was a copy of Principal Compton's letter to him summarizing what he had heard from the parties and witnesses.[4] Superintendent Culwell wrote to Mrs. Wynn again on February 15 informing her that the Board had scheduled a February 21 meeting to consider Candace Diggles' sus-

---

1. October 6, 1981, deposition of Candace Diggles, pp. 49–56.

2. October 6, 1981, deposition of Shirley Diggles Wynn, pp. 24–28.

3. Wynn deposition, pp. 32–36.

4. Exhibits A and B to Defendants' Motion for Summary Judgment, filed October 14, 1981.

pension and recommending that she request a third party hearing before then.[5] Finally, in a letter dated February 18, Superintendent Culwell himself scheduled a hearing for February 21.[6] At Mrs. Wynn's request, the hearing and Board meeting were postponed until February 24. On the 24th, Mrs. Wynn and Ms. Diggles appeared with counsel before Superintendent Culwell and presented their defense. After hearing all the testimony, the Superintendent decided to uphold Principal Compton's recommendation. Later that evening, the Board held a de novo hearing and voted to suspend Ms. Diggles.[7]

Mrs. Wynn was employed by the Corsicana Independent School District as a teacher's aide from 1969–1977.[8] In May of 1977, she and the other teacher's aides received a letter from Tommy Wardell, Director of Instruction, warning that the School District would probably have to reduce the number of teacher's aides.[9] The school did reduce the number of teacher's aides from 8 to 3 in the 1977–78 school year, and Mrs. Wynn was not rehired. From September 1977–1979, Mrs. Wynn worked as an aide at the Corsicana State Home.[10]

### Candace Diggles' Claims

Plaintiff Diggles contends that she was assaulted by Defendant Megarity; and that she was suspended from the Collins Middle School because of her race and without being afforded proper procedural safeguards, all in violation of the equal protection and due process clauses of the United States Constitution.

A student's legitimate entitlement to a public education is a property interest which is protected by the due process clause and which may not be taken away without adherence to the minimum procedures required thereunder. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). The nature of the proceedings required by due process depends on the severity of the punishment imposed. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Goss v. Lopez*. A suspension for more than ten days is a "most serious punishment," which requires more than the minimum procedural safeguards. *Williams v. Dade County School Board*, 441 F.2d 299 (5th Cir. 1971).

*Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961), is the leading Fifth Circuit case on the nature of the process to be afforded students facing lengthy suspensions. In *Dixon*, the Court listed the following requirements:

1. The student must be notified in writing of the specific charges against him "which, if proven, would justify expulsion under the regulations of the Board of Education."

2. "The student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies."

3. "He should also be given the opportunity to present to the Board, or at least to an administrative official . . . his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf."

In discussing *Dixon*, the Court in *Texarkana Independent School District v. Lewis*, 470 S.W.2d 727, 735 (Tex.Civ.App.—Texarkana 1971, no writ), proposed two additional safeguards:

4. "[T]he student is entitled to a reasonable time within which to prepare for the hearing . . . ."

5. Where the Board of Trustees proceeds through counsel, "the student has the right to be represented by counsel . . . ."

---

5. Exhibit C to Defendants' Motion for Summary Judgment.

6. Exhibit D to Defendants' Motion for Summary Judgment.

7. Wynn deposition, pp. 35–38, 80–84.

8. Wynn deposition, p. 13.

9. Exhibit F to Defendants' Motion for Summary Judgment.

10. Wynn deposition, pp. 11–12.

In the instant case, it is clear that Plaintiff Diggles was afforded more than adequate procedural protection. Principal Compton's letter, which was mailed to Plaintiffs, detailed the nature of the charges against Ms. Diggles, listed the witnesses to the incident, and summarized what the witnesses had told him. In his February 15 and 18 letters, Superintendent Culwell outlined Ms. Diggles' right to prepare and present her defense. When Plaintiffs failed to respond to his suggestions, Culwell himself scheduled a third party hearing. After one postponement due to the unavailability of Plaintiffs' counsel, both Plaintiffs appeared before the Superintendent with counsel, and presented their defense. Shortly thereafter, they appeared with counsel for a de novo hearing before the Board of Trustees. It is undisputed that they had adequate time to prepare for the hearing and de novo appeal and ample opportunity to present their version of the facts to the administration.

When adequate procedural safeguards have been provided, the sole function of the court is to determine whether there was substantial evidence supporting the charge against the student. *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1002, 43 L.Ed.2d 214 (1975); *Viverette v. Lurleen B. Wallace State Jr. College*, 587 F.2d 191 (5th Cir. 1979). Section 1983 does not entitle Plaintiffs "to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." *Wood* at 326, 95 S.Ct. at 1002. Having reviewed the record in light of the foregoing standard, the Court concludes that there was substantial evidence to support the Board's decision. As Jim Compton's February 11 letter indicates, witnesses to the February 10th incident reported that Candace Diggles hit Defendant Megarity several times. In addition, Plaintiff admit-

ted having done so.[11] Under the circumstances and in light of the applicable law, it would be inappropriate for the Court to second-guess the School Board or administration.

The Court likewise concludes that Plaintiff Diggles' equal protection claim is without merit. To show a violation of the equal protection clause, Plaintiff has the burden of proving that a discriminatory purpose was a "motivating factor" in the Defendants' decision to suspend her. *Arlington Heights v. Metropolitan Housing Corporation*, 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1976); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The determination of whether discriminatory purpose was a motivating factor "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights* at 266, 97 S.Ct. at 563. The Court has reviewed the entire record in this case, including the depositions of both Plaintiffs, and finds no evidence of discriminatory intent other than Plaintiffs' unsupported allegations. The Court notes in particular the deposition testimony of Dr. Bell, one of Plaintiffs' proposed witnesses, who admitted that he did not know whether there was any evidence indicating that minority children in the Corsicana Schools were punished more severely than anglo children.[12] The record being devoid of any such evidence, the Court concludes that summary judgment in favor of the Defendants is appropriate on this issue.

Plaintiff's assault claim remains. It is a pendent claim, of which this Court has no independent jurisdiction, and it is therefore DISMISSED without prejudice. *See* C. Wright and A. Miller, *Federal Practice and Procedure*, § 3567 (1975).

11. Diggles deposition, pp. 44–48.

12. April 30, 1981, Deposition of Dr. Bell.
   Although Dr. Bell testified that he was preparing a report, no such report has been filed, or otherwise identified to the Court.

Dr. Bell did testify about some reports prepared by the Office of Education regarding racial discrimination in the Corsicana schools and the incident at issue here. In its April 24, 1981, Order, however, the Court ruled that those reports were inadmissible.

### Plaintiff Wynn's Claims

Mrs. Wynn contends that the Board failed to rehire her without first affording her a hearing and in retaliation for her efforts to prevent her daughter's suspension, all in violation of the due process and equal protection clauses.

With regard to her due process claim, it is well-settled that "a non-renewal public employee is entitled to procedural safeguards only if her termination or non-renewal is a deprivation of protected liberty or property interests." *Barbre v. Garland Independent School District*, 474 F.Supp. 687, 700 (N.D. Tex.1979), citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Siler v. Brady Independent School District*, 553 F.2d 385 (5th Cir. 1977). Mrs. Wynn does not allege that the Board's failure to rehire her deprived her of a liberty interest. To the contrary, her deposition testimony reflects the fact that she sought and was able to procure another job beginning in September 1977.[13]

Instead, she maintains that the Board's action deprived her of a property interest. In *Board of Regents v. Roth*, the Supreme Court made it clear that a person "must have more than a unilateral expectation" or "abstract need or desire" to establish a property interest in a benefit. 408 U.S. at 577, 92 S.Ct. at 2709. In *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Court added, "A person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement . . .". Having reviewed the record with these standards in mind, the Court finds no evidence to support Mrs. Wynn's contention that she had a "legitimate claim of entitlement" to her continued employment as a teacher's aide. *Roth* at 577, 92 S.Ct. at 2709. It is undisputed that she held an untenured position that was not governed by written contract. Teacher's

aides customarily served one-year terms and were contacted by phone or letter at the end of the school year regarding their employment for the following year.[14] At the end of the 1976–77 school year, all aides were advised by letter that reemployment for the 1977–78 year was unlikely due to a reduction in the number of Title I positions.[15] Shortly thereafter, the school year ended, and Mrs. Wynn sought other employment.

The sufficiency of a claim of entitlement is governed by state law. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Under Texas law, "the mere fact that a teacher has been rehired each year for a period of years does not constitute any evidence that the School District had impliedly contracted with the teacher to renew the contract every year." *Hix v. Tuloso-Midway Independent School District*, 489 S.W.2d 706, 710 (Tex.Civ.App. —Corpus Christi 1972, writ ref'd n. r. e.). The record contains no evidence of any "existing rule" or "understanding" between the School District and Mrs. Wynn other than the fact that she had been employed in the past. Under controlling Texas law, such evidence is insufficient to support her claim. *See Siler v. Brady Independent School District*, 553 F.2d 385 (5th Cir. 1977).

To prove that she was terminated in retaliation for exercising her first amendment rights, Mrs. Wynn must first establish that such conduct was a "motivating factor" in the decision. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1976). Once she establishes that fact, the burden shifts to the defendants to prove that they would have made the same decision even "in the absence of the protected conduct." *Id.* The Court has reviewed the entire record and finds no evidence to support Mrs. Wynn's contention

---

13. Wynn deposition, pp. 11–12.

14. Wynn deposition, pp. 54–56.

15. Exhibits E and F to Defendants' Motion for Summary Judgment; Wynn deposition, p. 58.

other than her own allegations.[16] To the contrary, the Court finds that the evidence supports the Defendants' contention that the decision was the result of budgetary constraints.[17] That being the case, Rule 56 requires the Plaintiff to do more "than simply rely on the contrary allegation in her complaint." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 159–161, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Sweet v. Childs,* 507 F.2d 675, 679 (5th Cir. 1975).

In summary, the Court concludes that the Defendants have sustained their burden of establishing that there are no genuine issues of material fact regarding Plaintiffs' due process and equal protection claims. Plaintiffs having failed to respond to Defendants' motion, the Court is of the opinion that it should be, and is hereby, GRANTED. *See Adickes* and *Sweet, supra.*

Judgment will be entered in accordance with this Opinion.

SO ORDERED.

---

**16.** Although Mrs. Wynn contends that the decision not to rehire her was intended to punish her, she is unable to identify the individual who made the decision. Wynn deposition, p. 74.

**17.** Exhibits E and F to Defendants' Motion for Summary Judgment.