**Eric Rutz b/n/f Floyd Rutz v. Essex Junction Prudential Committee and Hollis Emery**

[457 A.2d 1368]

No. 82-087

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed January 27, 1983

*Blum Associates, Inc.,* Burlington, for Plaintiff-Appellant.

*Doremus, Congleton, Jenkins & Sutherland,* Essex Junction, for Defendant-Appellee.

Peck, J. This is an appeal by plaintiff from an order of the Chittenden Superior Court dismissing his untitled complaint in which he sought to enjoin the defendants from suspending or expelling him as a student at the Essex Junction High School. Plaintiff also claimed damages in an unspecified amount, but presented no evidence as to what the damages amounted to.

The grounds for the proposed disciplinary action was an alleged sale of a small quantity of marijuana by plaintiff to a fellow student on October 16, 1981. The court below granted a temporary restraining order pending a hearing on the merits which was held on November 12, 1981. The findings of fact, conclusions of law and the order issued on February 3, 1982. Plaintiff's expulsion has been stayed pending this appeal. We affirm.

The underlying fact of the sale of the drug by plaintiff has never been in dispute. It was admitted by him to school authorities on the date it occurred. The issues raised below and on this appeal relate exclusively to the procedures followed in deciding to remove him from the school, originally for the remainder of the fall 1981 semester. They are four in number and all highly technical in nature. The first relates to the authority of the Prudential Committee to act. The second issue challenges the adequacy of the notice of the committee hearing; and, more generally, charges the committee with failing to follow its own established expulsion procedures; thirdly, plaintiff contends the court erred in finding that he had been removed from school by the assistant principal as the duly

authorized agent of the principal. Finally, he contends the committee failed to make a finding that his continued presence at the school would be harmful to the welfare of the school as, he argues, is required by 16 V.S.A. § 1162.

We consider the issues in the order presented.

## I.

Plaintiff challenges the authority of the defendant committee to suspend or expel a student. He relies on 16 V.S.A. § 1162, which reads in part:

> A superintendent or principal may, pursuant to regulations adopted by the governing board, suspend, or with the approval of a majority of the ... board ... , dismiss or expel a pupil for misconduct when the misconduct makes the continued presence of the pupil harmful to the welfare of the school.

From this language, plaintiff would have us hold that only the superintendent or principal, subject to regulations adopted by the defendant committee as the "governing board," had the power to act in this case. We reject this interpretation of § 1162, however, as an improbable limitation on the authority of the governing boards of our state schools.

The purpose of § 1162 is not to limit the authority of school boards in disciplinary matters, nor does it mandate that boards must adopt regulations in favor of superintendents or principals. We hold that the purpose of § 1162 is to prescribe the conditions under which school boards may authorize certain officials to suspend, dismiss, or expel students, that is, by the adoption of appropriate regulations. In the absence of regulations adopted for that purpose, the enumerated disciplinary powers remain with the boards. In this respect we agree with defendants, and hold further that these powers are inherent in school boards, deriving by necessary implication from their statutory powers of governance in all matters pertaining to the schools under their jurisdiction.

One fault with plaintiff's argument is a familiar and frequently recurring one. His interpretation of 16 V.S.A. § 1162, even standing alone, is neither necessary nor com-

pelled by the literal or plain meaning rule. See *State* v. *Baldwin*, 140 Vt. 501, 509–10, 438 A.2d 1135, 1139 (1981). It is a construction which isolates this statute from others standing with it in pari materia. We have held frequently, and reiterate here, that statutes in pari materia, that is, dealing with the same general subject matter, must be read together and construed as parts of a statutory system. *In re Preseault*, 130 Vt. 343, 346, 292 A.2d 832, 834 (1972).

Applying this rule, we approve as a sound starting point the defendants' argument that 16 V.S.A. § 563 grants to school boards, including the defendant prudential committee, the power to establish educational policies, and to prescribe rules and regulations for the conduct and management of their respective schools. See 16 V.S.A. § 563(1). Student discipline is an important and necessary element of school management. The defendant committee was well within the scope of its statutory powers in adopting rules and procedures, reserving to itself the power to expel students. Therefore, we repudiate the validity of plaintiff's contention that in reserving the power of expulsion, the committee "has arrogated to itself the authority to expel, contrary to established Vermont law."

It is true of course that § 1162 is specific and § 563 is general. When two such statutes are in conflict to the extent they cannot be reconciled, the specific will usually prevail. *Aube* v. *O'Brien*, 140 Vt. 1, 4, 433 A.2d 298, 299 (1981). The rule does not aid the plaintiff; the two statutes are not in conflict. Section 1162 authorizes but does not require school boards to delegate the power to expel. In the instant case the defendant committee elected to retain the power to itself, as it had the right to do. The first sentence of the committee's "Procedures for Expulsion" reads: "Only the Prudential Committee shall have the authority to expel a student, and its decision shall be final."

We conclude that the defendant committee has the authority under Vermont law to expel students.

## II.

Plaintiff claims next that he did not receive a written notice

of the committee hearing containing a statement of the charges against him as contemplated by the committee's own regulations. The trial court agreed with this claim. Paragraph 12 of the findings reads in part: "Contrary to its own rules and regulations, neither the Committee nor its agents gave plaintiff a written statement of the charges . . . ." In the same paragraph, however, the court found the plaintiff was well aware of the charges and of the procedures to be followed at the committee hearing. Moreover, in another paragraph, the court found he had admitted the charges when first confronted by the school authorities, and the record discloses that at his hearing he again admitted he had sold marijuana to a fellow student.

Plaintiff argues that, as a minor, he has no capacity to waive his legal rights. We need not resolve that issue for purposes of this case; we are not concerned here with waiver, but, ultimately, with prejudice.

Essentially, the plaintiff's claim raises the issue of procedural due process rights. It is his position that the failure of the committee to provide him with a written notice containing a statement of the charges against him, as contemplated by its own regulations, constituted a deprivation of his due process rights, per se, that is, regardless of actual knowledge and notice, the absence of any resulting prejudice, or considerations of overall fairness. This position compels us to review applicable decisions of the federal courts, as well as the laws of this state.

In a leading decision of the United States Supreme Court involving a student suspension, the Court said:

> "[D]eprivation of life, liberty or property by adjudication [must] be preceded by notice and opportunity for hearing *appropriate to the nature of the case*." (Citation omitted.) ... At the very minimum, therefore, students ... must be given *some* kind of notice and afforded *some* kind of hearing.

*Goss* v. *Lopez*, 419 U.S. 565, 579 (1975) (emphasis in the original of the two words "some"; other emphasis added). Thereafter, in the same case, the Supreme Court said, "the student [must] be given oral or written notice of the charges against him." *Id.* at 581. It is true that *Goss* involved a sus-

pension for ten days or less, and the Court noted further that "[l]onger suspensions or expulsions . . . *may* require more formal procedures." *Id.* at 584 (emphasis added). But the Court said also that "'[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Id.* at 578 (quoting *Cafeteria Workers* v. *McElroy*, 367 U.S. 886, 895 (1961)).

■ We construe *Goss* to mean that, at least beyond the constitutional minimum requirements of notice and hearing, each case, as far as the Fourteenth Amendment of the Federal Constitution is concerned, must ultimately be determined on its own peculiar facts, and that "'the rudimentary elements of fair play' meet general requirements of due process." *Nzuve* v. *Castleton State College*, 133 Vt. 225, 229, 335 A.2d 321, 324 (1975).

Turning to the lower federal courts, decisions have examined both administrative noncompliance with established procedures on the one hand, and *substantial* compliance by school authorities with their own disciplinary rules on the other. In the first, one court said:

> [T]he legal conclusion that administrative noncompliance with established procedures and guidelines *in itself* amounts to deprivation of due process, even though said rules establish requirements in excess of the due process minimum . . . *is incorrect.*

*Morrow* v. *Bassman*, 515 F. Supp. 587, 592 (S.D. Ohio 1981) (emphasis added).

In a case dealing with substantial compliance, as distinguished from the strict and literal compliance requirement urged here by the plaintiff, the court's opinion contains the following:

> [T]he court finds that plaintiff was afforded due process as required by *Goss,* and defendants, by *substantially* complying with their disciplinary rules of suspension which go well beyond the constitutional minimum, satisfied the due process clause.

*Hillman* v. *Elliott*, 436 F. Supp. 812, 817 (W.D. Va. 1977) (emphasis added).

The claim in *Hillman*, as in the case before us, involved the failure of written notice in the presence of clear actual notice, coupled, also as here, with an admission to the charges by the student.

We decline to follow those courts which appear to hold that written notice is an inflexible sine qua non of due process under the Fourteenth Amendment, or that, if written disciplinary regulations are adopted, they must be strictly and literally complied with *necessarily*, under pain of reversal and damages. Therefore, it is appropriate that we delineate at least some of the reasons which have persuaded the majority to join with those courts which have espoused the contrary view.

At the outset we think these requirements are too rigid; unnecessarily so. There are, undoubtedly, as *Goss* points out, certain fundamental requirements such as *some* kind of adequate notice and opportunity for a proper hearing. Nevertheless, courts should be wary of attempting to prescribe, by judicial fiat, rules for the conduct of institutions and activities of which they have, as a rule, little first-hand familiarity, and at best only evidentiary knowledge, with all the potential shortcomings inherent in that source. Moreover, in adopting these inflexible requirements as a matter of law, courts deny even themselves the opportunity of making a wise choice based on the totality of the facts and circumstances of the particular case. In effect, these courts limit their own capacity to accomplish true justice in the unexpected type of case, the deserving, the new, and the novel. "Judge-made law" at least, should remain sufficiently flexible, whenever possible, to allow courts room to do justice in the particular case, without the embarrassment of attempting distinctions or outright overruling.

We believe these courts have expanded the proposition announced in *Goss*, that the very nature of due process negates any concept of inflexible procedures applicable to every conceivable situation, far beyond any language to be found in that case. Contrary to the wisdom of the *Goss* premise, they add instead, one more frozen layer to the concept of due process. They appear to exalt form over substance, and substitute a convenient rule in place of thinking and judicial inquiry. They limit severely the desirable opportunities for case-

by-case review and a true balancing of interests. They would deny consideration of actual notice and knowledge, substantial compliance, and prejudice or the lack of it. In short, they reject the proposition accepted by many other courts, that "[t]he concept of due process is premised upon fairness and reasonableness in light of the totality of circumstances." *Ingraham* v. *Wright*, 525 F.2d 909, 917 (5th Cir. 1976) (en banc) (emphasis added), *quoted with approval in Hillman, supra*, at 816.[1]

Some of these courts purport to have established their rigid requirements through a balancing of the interests involved. However, in setting these standards as a matter of law, they must necessarily have balanced the interests on broad hypothetical grounds, effectively shutting themselves off from any true balancing in the individual cases as they arise. They recite, for example, the possible adverse effect on a student as a result of an expulsion or suspension. However, an adverse experience *may* affect *any* person, young or adult. Overlooked, apparently, is the fact that these hypothetical traumas, the likelihood and seriousness of which we believe are exaggerated at best, will occur in any event by virtue of the disciplinary action itself, not because of the procedure followed. But this only brings us full circle to the question of fairness and reasonableness of the procedures followed in fact, in the light of the totality of the circumstances. *Id.*

We believe the underlying question should be whether the student's interests have been properly protected, so that he was not prejudiced by the failure to give written notice, per se, or by any failure of strict and literal compliance by school authorities with their own regulations. If that question can be answered in the affirmative, we would hold, generally, that there has been no *necessary* violation of the due process clause; the answer should provide one of the primary standards for the resolution of school disciplinary cases. With that criterion before us, we turn to the facts of the case at bar.

At the outset, the students were warned earlier in the year that drug violations would be looked upon as a serious matter

---

[1] *Ingraham* was affirmed in a 5-4 decision by the United States Supreme Court. See 430 U.S. 651 (1977).

and would be dealt with severely. The committee hearing date itself was agreed upon between the assistant principal and plaintiff's father. No continuance was requested for purposes of further preparation or otherwise, either prior to or at the hearing, although the assistant principal had indicated to the father that additional time would be allowed if requested. *Actual* notice of the charges to both plaintiff and his parents is clear and has not been questioned, nor is there any suggestion that the charges as presented to the committee were any different from those with which plaintiff had been confronted (and admitted) from the outset, and which he admitted again before the committee. Plaintiff and his parents participated in the committee hearing without objection based on any lack of written notice to either. He did not elect to be represented by counsel, although the family was advised he might have counsel if desired. The committee's attorney was present but did not take part in the examination of witnesses for either side; he was in fact little more than a spectator. Witnesses were called on behalf of the plaintiff, including both his father and mother, and written statements on his behalf by others, including members of the faculty, were received and considered. If the hearing was more formal than his father had anticipated, formality is a relative term at best, and the father was furnished a written outline of the procedures to be followed on the day prior to the hearing; he made no objection then or at any time thereafter.

For reasons which are not clear, plaintiff himself did not take the stand in the lower court, but his father admitted knowledge that the school administration would recommend his son's expulsion, and that such a result was a possibility. Several frank and candid discussions between the parents and the assistant principal of the school were held by phone and in the latter's office in the days prior to the committee hearing. Moreover, the father testified he had not been surprised by anything that took place at the hearing, that he heard nothing he did not already know, and that there was nothing he would have done differently had he been given more time to prepare for the hearing. In short, notice and knowledge is clear from the outset, and continued through the hearing which, in itself, was fair in all respects.

In light of these facts we are satisfied that in this particular case the plaintiff was dealt with fairly at all levels of the disciplinary procedures followed. In fact, excepting only the uncertain claim that plaintiff himself may not have been given a notice in writing of the charges, the required content of which he already knew, both the school authorities and the committee itself appear to have leaned over backwards in their efforts to accord him all of his rights relating to adequate notice and a fair hearing, and to satisfy their own obligations in those areas.

■ We conclude, and so hold, that minimum requirements of due process, as outlined in *Goss,* were satisfied as to the plaintiff in the instant case. It remains only to examine the effect under Vermont law of the school's failure to follow, strictly and literally, its own regulations. We must assume, as noted above, that the trial court's finding of noncompliance is fact.

On the question of notice in administrative proceedings, this Court has held:

> In the field of administrative regulation the essentials of due process must be met if a fair and open hearing is to be provided by the Board. (Citations omitted.) The question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure. Critical to a determination of whether the procedure was fair is whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding. (Citation omitted.)

*In re Green Mountain Power Corp.,* 131 Vt. 284, 293, 305 A.2d 571, 577 (1973). This ruling is consistent with our holding in *Nzuve* v. *Castleton State College, supra,* quoted above, to the effect that the measure of due process is fairness.

In *Nzomo* v. *Vermont State Colleges,* 136 Vt. 97, 385 A.2d 1099 (1978), a labor case involving the termination of a member of the faculty, we said that the Colleges' termination procedures were binding and must be "scrupulously observed." *Id.* at 100, 385 A.2d at 1101.

We have no quarrel with this language. However, it is perhaps desirable to clarify its meaning. We are reluctant to in-

dulge in semantics, recognizing, nevertheless, that semantics may play a legitimate part in the interpretation of the written word. Here, the word "scrupulous" does not necessarily mean "literal" or "exact." Dictionary definitions range from the "exact" concept, to attention to what is "right and proper," "conscientiously honest" and "moral integrity." See Webster's New World Dictionary, Second College Edition (1977); Webster's New Collegiate Dictionary (1975). Moreover, the scrupulous observance language in the context of *Nzomo* addresses a virtually total disregard for the substance, as well as the form, of the regulations to the point that the plaintiff might well have been prejudiced by the noncompliance; not so in the instant case. Here, the only discrepancy complained of was the alleged failure to provide plaintiff with written notice containing a statement of the charges against him; charges of which, the record makes abundantly clear, and the court properly found, he was well aware. He was advised of, and confronted with, the charges by school authorities, and they were admitted by him. At no time, as far as the record shows, did he equivocate, recant, or qualify his admission, or attempt to deny the truth of any part of the charges.

We hold that on the facts of this case the only regulation complained of on the appeal was scrupulously, if not literally, observed, through substantial compliance: the *actual* notice provided. We do not need to go even as far as the court did in *Hillman, supra,* at 815, 817, saying there that since the plaintiff admitted the charges it was sufficient; he must have had notice. There was here, in the view of the majority, at least substantial compliance by the school authorities with their own regulations, and a clear absence of any prejudice resulting from noncompliance by the school authorities with their own regulations.

If there were other regulations in doubt, questions relating thereto were not raised, briefed, or argued. We will not search the record for possible errors, if any, under those circumstances. On the contrary, we will assume they were followed, or substantially complied with to the plaintiff's satisfaction.

We think it appropriate to conclude discussion of the second issue with the caveat that this opinion is not to be construed

as carte blanche for any and all failures to comply with administrative regulations. Governmental agencies are expected to comply with their own rules. Where there has been a noncompliance, the potential for a due process violation is ever present, threatening reversal as well as the possible assessment of damages in many cases. We do not approve any failure by the defendants here. Repeated willful or careless disregard for regulations by the very authorities who make them would be a procedural mockery with which we will not be in sympathy. If schools do not intend to follow their own regulations which go beyond minimum due process requirements, they should not adopt them unless otherwise required by law.

On the other hand, where, as here, a close scrutiny of the facts discloses substantial compliance with administrative regulations, and a clear absence of prejudice, the adoption of an inflexible insistence on exact and literal compliance may also have undesirable consequences. These consequences might include, among others, a reluctance to adopt any regulations, or the revocation of those now existing, the breeding of disrespect for law and legitimate authority, and the difficulty in dealing effectively with the disciplinary problems rampant in many of the public schools today.

We hold that on the facts of this case there has been substantial compliance with the regulation complained of, and plaintiff has not been prejudiced by any failure of strict compliance. There has been no failure of due process under the Fourteenth Amendment or under Vermont case law. Accordingly, we reject plaintiff's due process claim and find no error on the second issue.

### III.

Plaintiff next takes issue with the court's conclusion that "[p]laintiff was in effect suspended, not expelled or dismissed, by Henry [the assistant principal], the duly authorized agent of principal Emery; and, therefore, the subsequent action by the Committee simply was a ratification of an accomplished fact."

It is not necessary to address the plaintiff's objections to this conclusion of law; indeed we agree with him that it is clearly wrong. We hasten to add, however, that this error does not require reversal of the ultimate decision of the trial

court to dismiss the complaint. The court has, in effect, reached a supportable result, albeit for the wrong reason. *Gilwee* v. *Town of Barre*, 138 Vt. 109, 111, 412 A.2d 300, 301 (1980).

It is apparent that in reaching the conclusion it did, the court below misunderstood the application of § 1162 to this case (see discussion of the first issue, *supra*), and it was, in fact, the committee which expelled the plaintiff.

The correctness of this conclusion is unmistakable. The first paragraph of the letter from a member of the committee, addressed to plaintiff's parents subsequent to the hearing, reads:

> At its meeting on Thursday, October 22, 1981, the Prudential Committee of the Essex Junction School District voted to expel Eric from the Essex Junction Educational Center for the remainder of the fall semester. This action was taken following the disciplinary hearing during which Eric admitted the possession and sale of marijuana on school property. Expulsion, defined as exclusion of the student from the school premises and all school functions for period of time, was deemed effective October 23, 1981.

There is nothing else in this letter which modifies the clear meaning of the quoted paragraph. Accordingly, we hold that plaintiff was expelled by the committee and that in doing so the committee acted within the scope of its statutory powers. The trial court's conclusion, while it was wrong as a matter of law, does not result in prejudice to the plaintiff. The final result reached by the court is proper, although it may have been reached, in part at least, for the wrong reason. *Id.*

## IV.

In the fourth specific issue raised by the plaintiff, he complains of the committee's finding that "Sale of marijuana on school property gravely affects the well-being of other students enrolled within the Essex Junction School District." He argues that this finding does not satisfy the provisions of 16 V.S.A. § 1162 which provides that a principal or superintendent is empowered to expel a student "when the misconduct makes the continued presence of the pupil harmful to the welfare of the school."

He contends the statute is penal in nature and consequently must be strictly construed. *State* v. *Sidway*, 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981).

There are several problems with plaintiff's argument. At the outset, we held above that § 1162 is not applicable to this case. Nevertheless, assuming, without deciding, that the criterion set forth in § 1162 should be the guiding principle, plaintiff's argument is no more than semantics. A strict construction does not necessarily mean a literal construction, nor one leading to absurd consequences. *Id.* We agree with defendants that "[i]t is difficult to imagine how anything can gravely affect students and not be harmful to the welfare of the school." Accordingly, we hold that, even if the criterion of § 1162 controls here, the committee's finding satisfies the spirit of the prescribed standard.

Finally, again assuming the § 1162 standard is applicable, and assuming further that the committee's finding did not satisfy it, these conclusions would not, standing alone, provide a basis for a permanent injunction against defendants. The proper course would have been a remand to the committee for further findings in accordance with the statutory mandate.

Plaintiff does not mount any other challenge to the finding beyond his strict construction argument; we reject this claim.

*Affirmed. Remanded to Essex Junction Prudential Committee for redetermination of suspension or expulsion period.*

**Billings, J.**, dissenting. I must respectfully dissent from the majority opinion, for it fails to apply the appropriate due process analysis for lengthy suspensions and expulsions first recognized by the Supreme Court in *Goss* v. *Lopez*, 419 U.S. 565 (1975), and refined in a series of lower federal court cases, the most recent of which is *Diggles* v. *Corsicana Independent School District*, 529 F. Supp. 169 (N.D. Tex. 1981). Proper application of this doctrine reveals that by neglecting to give plaintiff written notice of the specific charges against him, and further by neglecting to provide him with any of the documents relevant to the hearing, the Essex Junction Prudential Committee (hereinafter, "committee") failed to afford him the minimum requisites of due process and, in addition,

failed to follow its own established regulations. Given the severity of the punishment imposed, an expulsion for almost one-third of the school year, such a deprivation of procedural rights cannot be overlooked as a mere technicality. Nor should such factors as plaintiff's admission to the underlying misconduct enter into the court's determination of what process is due him. As the Supreme Court recently stated, "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . ." *Carey* v. *Piphus,* 435 U.S. 247, 266 (1978). I would therefore reverse the trial court's order denying plaintiff's application for a permanent injunction, and remand to that court for consideration of plaintiff's damage claim under 42 U.S.C. § 1983.

Since 1975, with the high court's ruling in *Goss* v. *Lopez, supra,* it has been beyond dispute that a student's "legitimate entitlement to a public education is a property interest which is protected by the due process clause and which may not be taken away without adherence to the minimum procedures required thereunder." *Diggles* v. *Corsicana Independent School District, supra,* 529 F. Supp. at 172 (citing *Goss* v. *Lopez, supra,* 419 U.S. at 574). The question thus becomes: what are the minimum procedures due in cases of lengthy suspensions and expulsions? In *Goss,* the Court held that in suspensions of not more than 10 days, the student is entitled to minimal due process consisting of "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss* v. *Lopez, supra,* 419 U.S. at 581. The Court cautioned, however, that it was addressing itself "solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

The Court did recognize, however, that the lower federal courts had long since held the Due Process Clause applicable to lengthy suspensions and expulsions, and it cited with approval the "landmark decision" in *Dixon* v. *Alabama State Board of Education,* 294 F.2d 150 (5th Cir.), *cert. denied,* 368 U.S. 930 (1961). *Goss* v. *Lopez, supra,* 419 U.S. at 576 n.8. That case involved expulsion from state college, and in it the

Court of Appeals for the Fifth Circuit set out the minimum standards for notice and hearing required by due process:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. . . . [T]he student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf.

*Dixon, supra,* 294 F.2d at 158–59.

Following this decision, lower federal and state courts struggled to complete the articulation of what process is due in lengthy suspension and expulsion cases. See generally, W. G. Buss, *Procedural Due Process for School Discipline: Probing the Constitutional Outline,* 119 U. Pa. L. Rev. 545, 589–639 (1971); Note, *Civil Rights: Inconsistent Due Process Standards Applied to Cases of Exclusion from Educational Institutions,* 34 Okla. L. Rev. 291, 296 (1981). With regard to the question of what constitutes adequate notice, "[t]he courts since *Dixon* have expanded on [*Dixon's*] general statement of principle by saying that in severe disciplinary cases, the student should be given notice in writing of the specific grounds for discipline and the nature of the evidence on which the proceeding will be based." D. Christensen, *Democracy in the Classroom: Due Process and School Discipline,* 58 Marq. L. Rev. 705, 714 (1975). In fact, a review of the decisions since *Dixon* reveals that, of those lower federal courts facing the question of what notice is due in cases of lengthy suspensions or expulsions, most found written notice to be a constitutional minimum.

In *Esteban* v. *Central Missouri State College,* 277 F. Supp. 649 (W.D. Mo. 1967), *aff'd,* 415 F.2d 1077 (8th Cir. 1969),. *cert. denied,* 398 U.S. 965 (1970), students were suspended from college following their participation in student riots. Although they were orally notified of the charges against them and participated in an informal hearing, the court held that their procedural rights had been violated. The court ordered a

new hearing, spelling out the requisite procedural safeguards to be applied. First among them was the following: "a written statement of the charges [is] to be furnished each plaintiff at least 10 days prior to the date of the hearing." *Id.* at 651. One year after its decision in *Esteban,* the Missouri district court issued a *General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education,* 45 F.R.D. 133 (W.D. Mo. 1968) (en banc). In it, the court stated the following:

> Three minimal requirements apply in cases of severe discipline, growing out of fundamental conceptions of fairness implicit in procedural due process. First, the student should be given adequate notice in writing of the specific ground or grounds and the nature of the evidence on which the disciplinary proceedings are based. Second, the student should be given an opportunity for a hearing . . . . The third requirement is that no disciplinary action be taken on grounds which are not supported by any substantial evidence.

*Id.* at 147.

The federal district court of New Hampshire has considered this question as well, and determined that when a high school student is suspended for more than five days, minimal standards of procedural due process require, *inter alia,* that the student and his parents receive written notice of the charges and evidence against him. *Vail* v. *Board of Education of Portsmouth School District,* 354 F. Supp. 592, 603 (D.N.H. 1973). Accord, *Gonzales* v. *McEuen,* 435 F. Supp. 460, 467 (C.D. Cal. 1977); *Black Students of North Fort Myers Jr.-Sr. High* School, *ex rel. Shoemaker* v. *Williams,* 335 F. Supp. 820 (M.D. Fla.), *aff'd,* 470 F.2d 957 (5th Cir. 1972); see also the following cases, finding due process met where schools provided written notice and hearing prior to lengthy suspensions or expulsions: *Linwood* v. *Board of Education,* 463 F.2d 763, 765 (7th Cir.), *cert. denied,* 409 U.S. 1027 (1972); *Fielder* v. *Board of Education,* 346 F. Supp. 722, 730 (D. Neb. 1972); *Lowery* v. *Adams,* 344 F. Supp. 446, 451–53 (W.D. Ky. 1972); *DeJesus* v. *Penberthy,* 344 F. Supp. 70, 77 (D. Conn. 1972); *Vought* v. *Van Buren Public Schools,* 306 F. Supp. 1388, 1393

(E.D. Mich. 1969) ; *Stricklin* v. *Regents of University of Wisconsin,* 297 F. Supp. 416, 418 (W.D. Wis. 1969), *appeal dismissed,* 420 F.2d 1257 (7th Cir. 1970).

The most recent case dealing with the procedural protections due students facing lengthy suspensions or expulsions is that of *Diggles* v. *Corsicana Independent School District, supra,* 529 F. Supp. at 172. That case involved a student expelled for the remainder of the school term, as was plaintiff. There, the court looked to the standards earlier set by the Fifth Circuit in *Dixon, supra,* as well as to lower state court decisions. In so doing, the court aligned itself with the other federal district courts, and adopted written notice to the student as one of the minimum due process criteria in such cases.

In 1975, this Court adopted the standards set out in *Dixon* as the minimum process due a student being expelled from state college. *Nzuve* v. *Castleton State College,* 133 Vt. 225, 229, 335 A.2d 321, 324 (1975). Admittedly, in *Nzuve* we only paraphrased the *Dixon* requirements, "without extensive quotations." *Id.* at 229, 335 A.2d at 324. Thus, the instant case forces us to reexamine and to clarify our holding in *Nzuve,* and to set out clear, constitutional standards to guide Vermont school officials in lengthy suspension and expulsion cases. In particular, we must determine whether a student facing such punishment has the right to receive written notice, clearly informing him of the charges against him and the rules which he has violated. I would follow the lead of the lower federal courts, cited with approval in *Goss* v. *Lopez, supra,* 419 U.S. at 576 n.8, and hold that minimum due process requires such written notice.

In determining whether to adopt this procedural safeguard, this Court must engage in the interest-balancing analysis established in *Mathews* v. *Eldridge,* 424 U.S. 319, 335 (1976). There the Court identified the three factors to be considered in determining the specific dictates of due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and admin-

istrative burdens that the additional or substitute procedural requirements would entail.

*Id.* at 335. Application of this test reveals that in severe school discipline cases, the balance must necessarily tip to accord the student the fullest possible procedure.

The private interest in balance is that of the student, and it is firmly established that a student facing even short-term expulsion from the educational process is threatened with the loss of constitutionally cognizable property and liberty interests. *Goss* v. *Lopez, supra,* 419 U.S. at 574, 576 n.8. Although it hardly bears repeating, the risk of lengthy, and sometimes permanent deprivation of public education carries with it even more serious hardship, for "the consequences of this loss will have a life-long impact." W. G. Buss, *Procedural Due Process for School Discipline, supra,* 119 U. Pa. L. Rev. at 578. A student whose record indicates such punishment risks his ability to continue his education, and further jeopardizes his access to higher education and a professional future. *Id.* at 578–79. Thus, the student's interest is indeed great.

As counterweight, the second prong in the balance is the possibility of erroneous deprivation of these interests by the failure to require written notice of the specific charges of misconduct, and the probable value of receiving such notice in writing. Notice implies giving a statement of the charges in sufficient detail, and sufficiently in advance of the hearing, to enable one to prepare a defense. K. Davis, Administrative Law Treatise § 8.05 (1958) ; W. Gellhorn & C. Byse, Administrative Law : Cases & Comments 837–59 (4th ed. 1960). Where serious constitutional interests are pending, written notice is usually contemplated. *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14 (1950). This is true for a number of reasons, not the least of which is the need to minimize risk of error : oral notice is too often vague, difficult to understand, and incomplete. See *Wolff* v. *McDonnell,* 418 U.S. 539, 563 (1974) ; *In re Gault,* 387 U.S. 1, 33–34 (1967). Moreover, oral notice is far more vulnerable to subsequent challenge, for its sufficiency cannot be judged on its face. Finally, written notice suitably heralds the commencement of serious proceedings threatening important rights, which proceedings are not to be entered lightly. Thus, written notice is clearly the safer practice.

The third interest to be weighed is that of the school, and consideration must be given to the additional burdens it might bear by the requirement of written notice. In *Goss,* the Supreme Court acknowledged the considerable interest of public schools in retaining unfettered freedom and authority over disciplinary matters, as well as their interest in expediting such matters whenever possible. But the Court did not "believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency." *Goss* v. *Lopez, supra,* 419 U.S. at 581. Thus, it required "oral or written notice of the charges" in cases of short suspensions, *id.,* and recognized that lengthier punishments might warrant even greater protections. *Id.* at 584. As to the additional costs and burdens presented by requiring written notice, it should be remembered that such severe sanctions as are at issue here are imposed only infrequently, in rare cases involving serious misconduct. A written notice requirement in such cases cannot legitimately be viewed as creating unmanageable burdens or prohibitive costs.

Therefore, after carefully weighing the important student interests at stake, the clear advantages of written notice, and the relative burdens to be borne by the schools, I would hold that a student facing lengthy suspension or expulsion must be accorded the minimal procedural safeguard of written notice of the charges against him.

Moreover, in this case it appears that an inquiry into the relative benefits and burdens of written notice was undertaken by the school committee itself, when it promulgated its rules governing suspensions and expulsions. Pursuant to state law, which requires all school districts to adopt and file guidelines setting forth "standards consistent with due process of law for discipline, suspension or dismissal of students," 16 V.S.A. § 1165(c), the committee issued regulations which include the following: (1) written notice of the specific charges must bs sent both to the student and to his parents prior to hearing; (2) written notice of the hearing itself must be sent both to the student and to his parents; and (3) the student and his parents must each be provided, prior to hearing, with "fact sheets" containing all the relevant documents to be used. This Court must assume that before the committee adopted these rules it duly considered the "fiscal and administrative

burdens" that adhering to them would entail. *Mathews* v. *Eldridge, supra,* 424 U.S. at 335. We must also assume that, had experience proven these requirements to be too expensive or burdensome, the committee would have amended them. Instead, they left the requirement of written notice intact.

Yet in this case the school authorities inexplicably ignored their own regulations. They imposed the severest of sanctions, an expulsion for almost one third of the school year, and yet failed to afford plaintiff even one of the prehearing protections enumerated above: plaintiff received neither written notice of the charges against him, nor written notice of the hearing, nor any of the "fact sheet" documents to be used at the hearing. Moreover, in what was perhaps a last minute effort to fulfill its obligations, the school did send written notice of the charges to plaintiff's parents; however, even this did not reach them until two days *after* the expulsion hearing.

The majority relies heavily on two factors in their determination that in this case there was substantial compliance with the regulations, and thus no resulting prejudice: first, that plaintiff admitted the underlying misconduct, and second, that he and his parents had actual notice. As to the first point, it is clear that admission of guilt in no way lessens the importance of safeguarding proper procedure.

> Even in that situation wherein a student unequivocally admits the conduct charged at an expulsion hearing, and procedural protections thus serve a more limited function . . . , the Seventh Circuit Court of Appeals will look to the existence of adequate notice of the charges and sufficient opportunity to prepare for the hearing on review of alleged due process violations.

*Keller* v. *Fochs,* 385 F. Supp. 262, 265 (E.D. Wis. 1974) (holding constitutionally inadequate written notice of expulsion which failed to state charges with the specificity required by *Dixon*) (citing *Linwood* v. *Board of Education, supra*). The Eighth Circuit concurred:

> [A]dequate notice and the opportunity to be heard . . . is no less important when, as here, there is not a serious dispute over the factual basis of the charge, for "things are not always as they seem to be, and the student will at

> least have the opportunity to characterize the conduct and put it in what he deems the proper context."

*Strickland* v. *Inlow,* 519 F.2d 744, 746 (8th Cir. 1975), on remand from *Wood* v. *Strickland,* 420 U.S. 308 (1975) (quoting *Goss* v. *Lopez, supra,* 419 U.S. at 584).

As to the second point, the Supreme Court has stated that " '[k]nowledge' of the charge . . . does not excuse the lack of adequate notice." *In re Gault, supra,* 387 U.S. at 34 n.54. Moreover, it bears repeating that plaintiff himself received none of the written notices or documents required. Nor can notice to the parents, however adequate, be substituted for notice to the student, either under the school's regulations or the *Diggles-Dixon* line of cases. While it may in fact be laudable that the parents had "a frank and open interchange" with the school officials, plaintiff was the one facing the loss, and thus was the one to whom the requisite notice was warranted. See Buss, *Procedural Due Process, supra,* 119 U. Pa. L. Rev. at 588.

Nor can it fairly be said that plaintiff suffered no prejudice by the committee's arbitrary departure from its own regulations and the constitutional requisites. Plaintiff's father testified below that he and his wife determined not to bring an attorney to the hearing because of their understanding that the hearing would be a "family-type affair," where they could discuss the "problem" with the teachers and administrators. In addition, they were led to believe that the school would not bring its attorney unless they were going to bring theirs; nevertheless, the school's attorney was present. Had plaintiff and his parents received all the notice and prehearing documentation due them, they might have more properly anticipated the adversarial nature of the proceedings, and prepared accordingly. Moreover, without the counsel of an attorney, the Rutz' had no reason to know the importance of objecting to the procedural violations of the committee at the hearing level. Indeed, until the imposition of the expulsion order and their subsequent consultation with counsel, they had no way of knowing that the committee had in fact committed any procedural violations.

The appropriate remedy in cases of this nature is to grant the plaintiff's request for a permanent injunction, reinstate the student in good standing, and remand to the trial court for

424

the determination of damages under 42 U.S.C. § 1983. *Carey* v. *Piphus, supra; Goss* v. *Lopez, supra; Strickland* v. *Inlow, supra,* 519 F.2d at 747; *Dillon* v. *Pulaski County Special School District,* 468 F. Supp. 54, 58–59 (E.D. Ark. 1978), *aff'd,* 594 F.2d 699 (8th Cir. 1979). On remand, the trial court would of course be bound by the rule of *Carey* v. *Piphus, supra,* which was adopted by this Court in *Nzomo* v. *Vermont State Colleges,* 138 Vt. 73, 411 A.2d 1366 (1980). If the committee could prove that the expulsion would have occurred even had all procedural regulations been complied with, then plaintiff would not be entitled to recover damages for injuries caused by the expulsion. *Carey* v. *Piphus, supra,* 435 U.S. at 260; *Nzomo* v. *Vermont State Colleges, supra,* 138 Vt. at 76–77, 411 A.2d at 1367–68.

However, even if the student's suspension were justified, and even if he did not suffer actual injury, the fact remains that he was deprived of his right to procedural due process. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing . . . ." *Carey* v. *Piphus, supra,* 435 U.S. at 266 (quoting *Fuentes* v. *Shevin,* 407 U.S. 67, 87 (1972)). Thus, the Court went on to hold that "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Id.* Under the rule of *Carey,* plaintiff would therefore be entitled to nominal damages. *Id.* at 267; *Dillon* v. *Pulaski, supra; Nzomo* v. *Vermont State Colleges, supra,* 138 Vt. at 76, 411 A.2d at 1367–68.

**Hill, J., dissenting.** I have considered the opinions of both the majority and dissent, and concur in the majority's analysis of issues I, III and IV. I am reluctantly compelled to dissent from its analysis of issue II, but for reasons which differ from those set forth in the dissent of my brother Billings.

The analysis of the second issue must begin with the initial determination of whether plaintiff was afforded the due process guaranteed him through the Fifth and Fourteenth Amendments to the United States Constitution. In *Goss* v. *Lopez,* 419 U.S. 565, 574 (1975), the United States Supreme Court clearly established that "a student's legitimate entitlement to a public education [is] a property interest which is protected by the

Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." Accord, *Diggles* v. *Corsicana Independent School District,* 529 F. Supp. 169, 172 (N.D. Tex 1981). In addition, that a legitimate claim of entitlement to a public education is a protected property interest is embodied in both the Vermont Constitution as well as Vermont's education laws. See, e.g., Vermont Constitution, Ch. II, § 68; 16 V.S.A. § 1073; *Ouimette* v. *Babbie,* 405 F. Supp. 525, 529 (D. Vt. 1975). However, "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer,* 408 U.S. 471, 481 (1972).

In *Goss* v. *Lopez, supra,* the Supreme Court, in a decision expressly limited to short suspensions not exceeding 10 days in length, outlined those minimum procedures due a student prior to such suspensions. "[D]ue process requires . . . that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. Fundamental to *Goss'* analysis of what process was due was the notion "that the interpretation and application of the Due Process Clause are intensely practical matters and that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Id.* at 578 (quoting *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 895 (1961)). Likewise, this Court has stated that "the 'rudimentary elements of fair play' meet general requirements of due process." *Nzuve* v. *Castleton State College,* 133 Vt. 225, 229, 335 A.2d 321, 324 (1975). Simply put, the requirements of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution are neither fossilized nor engraved in granite.

As the dissent of my brother Billings correctly points out, the *Goss* decision specifically left open for future review those situations involving longer suspensions or expulsions which "may require more formal procedures." *Goss* v. *Lopez, supra,* 419 U.S. at 584. However, in *Nzuve* v. *Castleton State College, supra,* this Court has already had the occasion to set forth the minimum process due a student being expelled from state college:

> [T]he criteria of due process prior to expulsion from a state college . . . are a statement of specific charges and grounds for expulsion under appropriate regulations; a hearing approaching more than an informal interview with administrative authority; an opportunity for both sides to be heard in considerable detail at a hearing best suited to protect the rights of all involved, not necessarily public; the "rudiments" of an adversary proceeding. A full-dress judicial hearing, with right of cross-examination, is not required, but a right to present a defense, by oral testimony or affidavits, is.

*Id.* at 229, 335 A.2d at 324 (citing *Dixon* v. *Alabama State Board of Education,* 294 F.2d 150, 158 (5th Cir.), *cert. denied,* 368 U.S. 930 (1961)).

In my view, *Nzuve* provides fair and adequate protection for the due process rights of the student, while at the same time it recognizes that "public education in our Nation is committed to the control of state and local authorities." *Epperson* v. *Arkansas,* 393 U.S. 97, 104 (1968). Since fundamental due process as required by the United States Constitution, as well as our own, requires above all else fairness, I cannot say that plaintiff was denied a fair, open and patient hearing with actual notice. Therefore, I would reaffirm the due process protections outlined in *Nzuve,* but would not, as the dissent of my brother Billings would have us do, extend the *Nzuve* requirements so as to include written notice to the student in all cases.

However, our analysis must not stop here, for the plaintiff insists that he never received written notice of the committee hearing containing a statement of charges against him as contemplated by the defendant committee's own regulations. Indeed, the findings of the trial court clearly state that "[c]ontrary to its own rules and regulations, neither the committee nor its agents gave plaintiff a written statement of the charges. . . ." Since this finding has not been challenged by either party, it must stand. *Town of Lyndon* v. *Burnett's Contracting Co.,* 138 Vt. 102, 107, 413 A.2d 1204, 1207 (1980) (citing *Delance* v. *Hennessey,* 137 Vt. 214, 216, 401 A.2d 903, 904 (1979)). The essence of plaintiff's argument, then, is that defendant's failure to comply with its own procedural regulations amounted to a denial of due process. I agree.

· Embodied within the regulations of the school board is a higher standard of due process than that of *Nzuve*. In particular, the procedures for expulsion, as set forth in the Essex Junction Student Handbook, provide in part as follows:

Only the Prudential Committee shall have the authority to expel a student, and its decision shall be final. A recommendation for expulsion shall be made in writing to the Prudential Committee with a certified copy being sent to the student and his/her parent or guardian at their home address. The procedure in any case involving a recommendation for expulsion shall include the following steps.

. . . .

2. Before the Prudential Committee considers any recommendation for expulsion, the student shall be given an opportunity to present his/her case to the Prudential Committee, and to present witnesses in his/her own behalf. *The student shall be sent formal written notification of his/her opportunity to appear before the Prudential Committee and to present witnesses at least one week prior to the first scheduled session during which the recommendation is to be considered.* (Emphasis in original.)

In addition, the defendant committee's "Procedures for Hearing Process For Student Suspension or Expulsion" further require that the written notice contain "a statement of charges or the facts as known by the assistant principal and/or principal." Finally, the regulations clearly state that said written notice is to be part of a larger "fact sheet" package consisting of suspension letters, a guidance counselor evaluation report, a police report, and a summation of prior disciplinary reports. There is no indication in the record that the student received any of these.

In *Nzomo* v. *Vermont State Colleges*, 136 Vt. 97, 385 A.2d 1099 (1978), a case dealing with a grievance before the State Labor Relations Board, we stated that "[i]t is a firmly established principle of administrative law that defined dismissal procedures, although generous beyond the due process requirements that bind the agency, are binding and must be scrupulously observed." *Id.* at 100, 385 A.2d at 1101 (citing *Vitarelli*

v. *Seaton,* 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring in part and dissenting in part)). Although *Nzomo* was not a case specifically addressing student suspensions or expulsions, it is nonetheless instructive, since it illustrates the principle that "[a] governmental agency violates a person's due process rights when it renders a decision or takes an action without complying with its own regulations." *Moss* v. *Ward,* 450 F. Supp. 591, 598 n.8 (W.D. N.Y. 1978) (citing *Accardi* v. *Shaughnessy,* 347 U.S. 260, 268 (1954)). This principle is totally consistent with the above discussion of due process, for a "[f]ailure to follow such guidelines tends to cause unjust discrimination and deny adequate notice contrary to fundamental concepts of fair play and due process." *International House* v. *NLRB,* 676 F.2d 906, 912 (2d Cir. 1982) (quoting *NLRB* v. *Welcome-American Fertilizer Co.,* 443 F.2d 19, 20 (9th Cir. 1971)); see also *Superior Savings Association* v. *City of Cleveland,* 501 F. Supp. 1244, 1249 (N.D. Ohio 1980) (citing *Service* v. *Dulles,* 354 U.S. 363 (1957)).

In the instant case, defendant's regulations for expulsion were specific and unambiguous. They were not foisted on the committee; rather, they were promulgated by the committee. Indeed, some of the procedural matters were important enough in the eyes of the committee to be underlined so as to reflect added emphasis. Moreover, the record discloses that the school was well aware of the written notice requirements, since it belatedly sent such notice to the plaintiff's parents, not plaintiff, two days *after* the expulsion hearing. In light of *Nzomo,* I would hold that defendant had a duty to abide by its own regulations. As indicated in *Nzomo,* "the absence of any constitutionally impermissible bias or motive, or indeed the presence of absolute good faith, does not vindicate the defendant for its failure to comply with the termination procedure." *Id.* at 102, 385 A.2d at 1102.

Accordingly, since the unchallenged findings clearly establish that defendant failed to comply with its written notice requirements, I would grant plaintiff's request for a permanent injunction, reinstate the student in good standing, and remand to the trial court for a redetermination of damages under 42 U.S.C. § 1983.